632 So.2d 1209 (1994)
Mary MORRIS, Plaintiff-Appellant,
v.
ALLSTATE INSURANCE COMPANY, American National Group Insurance Co., Michael Woolsey, Sarah Woolsey and Charles Woolsey, Defendants-Appellees.
No. 25148-CA.
Court of Appeal of Louisiana, Second Circuit.
February 23, 1994.
Rehearing Denied March 24, 1994.
Jefferson, Focke & Broussard, Monroe, by Francis C. Broussard, for plaintiff-appellant.
Hudson, Potts & Bernstein, Monroe, by W. Lee Perkins, Jr., for defendant-appellee LA Ins. Guar. Ass'n.
Theus, Grisham, Davis & Leigh, Monroe, by Ronald L. Davis, Jr., for defendant-appellee Aetna Cas. & Sur.
Before MARVIN, NORRIS and VICTORY, JJ.
MARVIN, Chief Judge.
In this personal injury action for damages arising out of a back injury, the factual issue is whether the injury was caused by an automobile *1210 accident on February 9, 1990, or by the plaintiff lifting an obese patient during the course of her employment as a nurse's aide nine days later.
Finding that the injury was caused by the lifting, "a separate, independent, and intervening act," the trial court rejected plaintiff's demands against her and her employer's UM carriers.
We conclude the trial court was not clearly wrong in resolving the factual issue and affirm the judgment.

FACTS
Plaintiff Mary Morris had the accident about 9:30 a.m. February 5, 1990, with another automobile driven by Sarah Woolsey. Mrs. Morris, who was wearing her seat belt, hit her head on the steering wheel of her car. A nurse's aid rendering home health care, Mrs. Morris was driving from the home of one patient to the home of another. Later the evening of the accident Mrs. Morris went to a Monroe hospital complaining of headaches and neck pain. She was diagnosed with a cervical strain. She missed one day before returning to her work.
On February 14, 1990, during the course of her employment, using a bedsheet, Mrs. Morris was attempting to logroll an overweight bedridden patient when she experienced back pain. She stated:
I went to logroll her ... and when I pulled the draw sheet, I experienced a pain ... in my lower back. Anyway I had to let her fall back and I attempted to pull her again. So this time I got up on the bed because I felt if I got closer to her ... I might have more leverage.... I experienced another pain and I sort of kind of like fell over on her.
After this incident, Mrs. Morris returned to the same hospital, there complaining that she had been experiencing neck and back pain since the February 5, 1990, accident. She was diagnosed with a thora-columbar musculoskeletal strain.
On October 24, 1990, Mrs. Morris filed her action for damages arising out the February 5 automobile accident, eventually joining her and her employer's UM carriers as defendants. She settled with Mrs. Woolsey and Woolsey's liability insurer for that insurer's $10,000 policy limits. In the trial court and here, seeking recovery against the UM carriers, Mrs. Morris contends that her low back injury was at least caused in part by the automobile accident.

CAUSATION
Mrs. Morris contends that the trial court applied the incorrect standard in determining causation, and was manifestly erroneous in finding that she failed to prove the accident was the cause or a contributing cause of her back problems. We do not agree with her contentions.
The trial court stated:
The test in a personal injury suit for determining a causal relationship between an accident and subsequent injuries is whether the victim proved through medical testimony that it was "more probable [than] not" that the subsequent injuries were caused by trauma suffered in the accident. Mart v. Hill, 505 So.2d 1120, 1128 (La.1987), Williamson v. St. Francis Medical [Center], 559 So.2d 929, 932 (La. App. 2d Cir.1990). The medical evidence must show that there is a "reasonable possibility" of a "causal connection" between the accident and the disabling condition. An exact medical diagnosis is not required. Housley v. Cerise, 579 So.2d 973, 980 (La. 1991), Lucas v. Insurance Company of North America, 342 So.2d 591, 597 (La. 1977), Durkee v. City of Shreveport, 587 So.2d 722, 728 (La.App. 2d Cir.1991), [writ denied,] Patterson v. GNB Battery[, Inc.], 569 So.2d 640, 642 (La.App. 2d Cir.1990)[, writ denied]. Or, the medical evidence must show that the nature of the accident, when combined with other facts of the case, raised "a natural inference" through human experience that such a causal connection does exist. Lubom v. L.J. Earnest, Inc., 579 So.2d 1174, 1179 (La.App. 2d Cir.1991).
Mrs. Morris submits that although it was correctly noted that the standard of proof was a "reasonable possibility" or a "natural inference," the trial court incorrectly applied *1211 the "more probable than not" standard. Again we do not agree.
A claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident, the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition. Housley v. Cerise; Lucas v. Ins. Co. of North America; Durkee v. City of Shreveport; and Williamson v. St. Francis Medical Center, all cited supra.
Once a claimant establishes the prerequisites to apply the presumption of a causal relationship, the defendant has the burden of producing evidence to persuade the trial court that it is more probable than not that the injury did not result from the accident or did not accelerate, aggravate, or combine with the pre-existing disease or condition to produce the disability. Lubom v. L.J. Earnest, Inc., supra.
Causation is a factual question, and the trier of fact's determination cannot be disturbed absent manifest error. Durkee v. City of Shreveport, supra; Williamson v. St. Francis Medical Center, supra.
The weight to be accorded to testimony of experts depends largely on their qualifications and the facts on which they base their opinions. The trial court may evaluate expert testimony by the same principles that apply to other witnesses and has great discretion to accept or reject medical or lay opinion. Durkee v. City of Shreveport, supra.
The emergency room report of the February 5, 1990, visit does not indicate that Mrs. Morris complained about her mid [thoracic] or low [lumbar] back. She complained of neck pain and blurred vision, and was diagnosed by the emergency room physician with a cervical strain. On February 14, 1990, Mrs. Morris was diagnosed with thora-columbar musculoskeletal strain. The emergency room report of February 14, 1990, does show however, that Mrs. Morris stated that she had experienced back and neck pain on and off since the accident.
Mrs. Morris testified that when she went to the hospital on the evening of the February 5, 1990, accident, she was having problems with her neck and back. Following the accident, Mrs. Morris returned to work after missing only one day. She stated that the pain continued over the next few days, and the neck and back pain did not cease before the February 14, 1990, incident. Mr. Morris also testified that Mrs. Morris had difficulties with her back after the accident.
Dr. Cline, a board certified orthopedic surgeon, testified by deposition that he treated Mrs. Morris from February 23, 1990, after both of her February incidents, until May 25, 1990, at which time Mrs. Morris was not complaining of pain anywhere. During her February 23 visit, Mrs. Morris told Dr. Cline about the February 5 automobile accident. She told Dr. Cline that she mainly experienced headache and neck pain and had some lower back discomfort, but missed only one day of work. Mrs. Morris also told him about attempting to roll or lift the obese patient on February 14 and how and where it affected her.
Dr. Cline concluded that these two incidents produced separate symptoms. He opined that her low back pain was related to the lifting injury, a "traumatic event" in and of itself. On cross-examination, Dr. Cline acknowledged that it is possible for a person to have neck pain after an automobile accident and then a day or two later to have back pain and that it is possible that the automobile accident contributed to the February 14 incident. Being asked, "Would you think that it is more probable than not that [the automobile accident] at least contributed to the February 14th accident?," Dr. Cline answered, "This is pure speculation. Due to the close proximity of the two injuries, I'd say there is a good likelihood that that might have."
Dr. Taylor, a board certified orthopedic surgeon, testified by deposition that he saw Mrs. Morris on August 2, 1990, on her attorney's referral or request for an independent medical evaluation. Dr. Taylor reviewed Dr. *1212 Cline's records and interviewed Mrs. Morris. He concluded that her low back pain was the result of her logrolling of the patient. Dr. Taylor stated:
My impression is that most of her injury from the car wreck was in her thoracic spine and cervical spine, by her history, and most of it in the low back was due to lifting and moving that paralyzed patient. But I can'tI'm sorry, I'm just not able to clearly demarcate those two.
Dr. Taylor further said, "It ... seems more probable to me that her low back injury is due to the lifting ..." This impression was primarily based on the history Dr. Taylor obtained directly from Mrs. Morris. Dr. Taylor acknowledged that it is possible that Mrs. Morris had the initial strain in the automobile accident, and it was aggravated while lifting the patient, but he also stated,
Most people, if their low back is hurting, they'll change their posture and do other things. They'll try to avoidThey'll really do a lot to try to avoid doing things that bother it.
Mrs. Morris's attorney also referred her to Dr. Woods for an independent medical evaluation. Dr. Woods was also deposed about his examination of Mrs. Morris. The trial court correctly found that Dr. Woods could not express a meaningful opinion regarding causation because Mrs. Morris did not tell him about the second incident of injury.

CONCLUSION
As in any negligence case, the trial court was required to determine the preponderance of the evidence (more probable than not) to resolve what caused the low back injury. A medical expert may opine as to the reasonable possibility of the causal connexity between an accident or an incident and the ultimate medical condition, but the ultimate determination of more-probable-than-not rests with the court.
Presumptions may aid the court in its determination. In some circumstances there may be a "natural inference" of the causal connection. See Lubom v. L.J. Earnest, Inc., cited supra. In circumstances where before the accident the claimant was in good health, but commencing with the accident developed symptoms of the disabling condition that continued and progressed to disability without other explainable causes, the disability may be presumed to have resulted from the accident, providing that the medical evidence shows a reasonable possibility of causal connection between the accident and the disabling condition. Housley v. Cerise; Lucas v. Ins. Co. of North America; Durkee v. City of Shreveport; and Williamson v. St. Francis Medical Center, all cited supra.
A plaintiff need not show that a defendant's conduct was the only cause of the injury nor negate all other possibilities, but she must show more probably than not that the defendant's conduct caused the injury. Straley v. Calongne Drayage & Storage, Inc., 346 So.2d 171 (La.1977).
One of two conclusions could have been drawn by the trial court on this record: The one urged by Mrs. Morris [the accident contributed to the lifting incident and the two combined to cause the low back injury] or the one the trial court actually reached, "more probably than not Ms. Morris' low back injury was caused by ["a separate, independent... act,"] her lifting the patient."
Any prima facie showing or presumption that Mrs. Morris's low back condition was caused by the automobile accident was negated by the evidence of the lifting incident at work nine days later, a separate traumatic event. Compare Younger v. Marshall Industries, Inc., 618 So.2d 866 (La.1993); Housley v. Cerise, supra; and Mart v. Hill, supra.
We cannot say the trial court was clearly wrong.

DECREE
At appellant's cost, the judgment is AFFIRMED.

APPLICATION FOR REHEARING
Before MARVIN, NORRIS, VICTORY, BROWN AND WILLIAMS, JJ.
Rehearing denied.