706 So.2d 193 (1998)
Charles E. WHITTHORNE, Plaintiff-Appellant,
v.
FOOD LION, INC., Defendant-Appellee.
No. 30105-CA.
Court of Appeal of Louisiana, Second Circuit.
January 21, 1998.
Rehearing Denied February 19, 1998.
*195 Frank M. Ferrell, Shreveport, for Plaintiff-Appellant.
Cook, Yancey, King & Galloway by Lee H. Ayres and J. Todd Benson, Shreveport, for Defendant-Appellee.
Before BROWN, WILLIAMS and PEATROSS, JJ.
PEATROSS, Judge.
In this personal injury action, the jury returned a verdict, finding Defendant, Food Lion, Inc., to be two-thirds at fault and Plaintiff, Charles E. Whitthorne, to be one-third at fault and awarding Plaintiff $2,500 in past medical expenses, $500 for past mental and physical pain and suffering and $0 for future medical expenses and future mental and physical pain and suffering. The trial court entered judgment which, in accordance with the jury's allocation of fault, awarded Plaintiff a total of $3,000.[1] Plaintiff appeals this judgment alleging: (1) the awards for past mental and physical pain and suffering and past medical expenses are abusively low; (2) the jury erred in failing to make an award for future medical expenses and future mental and physical pain and suffering; and (3) the trial court improperly denied the Motion for Judgment Notwithstanding the Verdict or for New Trial.

FACTS
On June 9, 1995, Plaintiff entered the Food Lion store located on Bert Kouns Road in Shreveport and, after completing his shopping, began looking for a short check-out line. Just prior to this, the one-year-old child of another Food Lion customer threw a bottle of syrup onto the floor while in the check-out line, causing syrup to spill on the floor. The customer had her 11-year-old daughter inform Trenton Smith, an employee of Food Lion, of the spill. Before Mr. Smith could clean up the spill, however, Plaintiff slipped in the syrup and fell to the ground. Plaintiff claimed he hit his hip and left elbow and that he hurt his knee when his left leg was twisted back underneath his right leg.
Plaintiff was taken directly to the Willis-Knighton South emergency room. After x-rays of his left elbow, wrist and knee revealed no broken bones, Plaintiff was released with pain medication. Plaintiff began treatment with chiropractor Dr. Eric Berg on June 15, 1995. Dr. Berg treated Plaintiff three times a week between June 15 and August 2, 1995, and then monthly from September 1995 to January 4, 1996. The alleged total cost of Dr. Berg's treatment was $5,085.21.
After Dr. Berg's recommendation that Plaintiff see an orthopedic surgeon for treatment of his left knee, Plaintiff visited Dr. David Waddell on April 2, 1996. Dr. Waddell examined Plaintiff and recommended a neurological examination and possible arthroscopic meniscectomy. Dr. Waddell reexamined Plaintiff on August 8, 1996, and again diagnosed Plaintiff with a torn left medial meniscus and mild degenerative joint disease. Dr. Waddell estimated the cost of arthroscopic surgery to improve the torn meniscus would cost between $6,000 and $7,000 with a surgical fee of $2,500.
A three-day jury trial on this matter began on October 22, 1996. At the time of trial, Plaintiff had not had surgery for his knee problems. The jury found that: (1) the syrup presented an unreasonable risk of harm to Plaintiff, (2) Food Lion employees had *196 actual or constructive notice of the syrup prior to Plaintiff's fall, (3) Food Lion employees failed to exercise reasonable care under the circumstances, (4) Plaintiff's fall more probably than not was caused by the acts or omissions of Food Lion and (5) Plaintiff was one-third at fault in causing or contributing to the fall. The jury then awarded damages as discussed above. Plaintiff moved for judgment notwithstanding the verdict, new trial and/or additur. The trial court denied Plaintiff's motions and this appeal followed. For the following reasons, we amend the general damage award and, as amended, affirm the judgment of the trial court.

DISCUSSION

General Damages
Plaintiff argues that the awards of $500 for his past mental and physical pain and suffering and $0 for his future mental and physical pain and suffering are abusively low. Despite Plaintiff's challenge to the adequacy of each element of the general damage award, the proper question does not require a belaboring of each individual item but, instead, a decision as to whether the total award constitutes an abuse of discretion. Evans v. Kilbert, 27,101 (La.App.2d Cir. 8/23/95), 660 So.2d 167; Sledge v. Continental Casualty Co., Inc., 25,770 (La.App.2d Cir. 6/24/94), 639 So.2d 805.
General damages are those which may not be fixed with pecuniary exactitude. They instead involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment or other losses of lifestyle which cannot be definitely measured in monetary terms. Killough v. Bituminous Cas. Corp., 28,392 (La. App.2d Cir. 5/8/96), 674 So.2d 1091; Kessler v. Southmark Corporation, 25,941 (La. App.2d Cir. 9/21/94), 643 So.2d 345.
In assessing damages in cases of offenses, quasi-offenses and quasi-contracts, much discretion is left to the judge or jury. La. C.C. art. 2324.1. Before an appellate court may disturb such an award, the record must clearly reveal that the trier of fact abused its broad discretion in making the award, based on the facts and circumstances peculiar to the case and the individual under consideration. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993); Dixon v. Tillman, 29,483 (La.App.2d Cir. 5/7/97), 694 So.2d 585. It is only after an articulated analysis of the facts discloses an abuse of discretion that resort to prior awards in similar cases is proper. Dixon, supra. If the award is abusively low, it is raised to the lowest amount the trier of fact could reasonably have awarded. If the award is abusively high, it is reduced to the highest amount the trier of fact could have awarded. Dixon, supra; Day v. Silver Oak Cas., Inc., 28,566 (La.App.2d Cir. 8/21/96), 679 So.2d 486.
A presumption of causation will aid a plaintiff in his burden of proving that the claimed injuries resulted from the accident if, before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable probability of causal connection between the accident and the disabling condition. Maranto v. Goodyear Tire & Rubber Co., 94-2603 (La.2/20/95), 650 So.2d 757; Housley v. Cerise, 579 So.2d 973 (La.1991).
In the present case, witness Jane Woods saw Plaintiff just prior to the accident walking briskly across the front of the store, without a limp. During his first visit to Dr. Berg following the accident, Plaintiff would not allow the chiropractor to examine his left knee because it was causing him so much pain. Dr. Berg testified that Plaintiff's left knee was "very swollen and tender." Plaintiff complained to Dr. Berg of dull pain in the left hip; radiating symptoms in his left thigh, kneecap, foot and toes; left knee pain which was aggravated by walking; numbness and tingling in his left leg and lower back; and pain in his left elbow, arm and wrist.
Dr. Berg testified that Plaintiff suffered from degenerative arthritis in his lower back. In addition, Dr. Waddell testified that the numbness and tingling in Plaintiff's extremities were caused by a diabetic condition known as diabetic neuropathy; that Plaintiff's hip pain was caused by degenerative *197 arthritis; and that Plaintiff also suffered from degenerative arthritis in his knees. Dr. Waddell further stated that Plaintiff did not suffer from a pinched nerve or herniated or ruptured disk in his lower back. Finally, Dr. Waddell testified that the torn meniscus in Plaintiff's left knee could be caused by trauma and that, "It is compatible with a hyperflexion injury that the cartilage could have been damaged."
From this testimony, we find that the jury could have reasonably concluded that the only injury resulting from this accident is the torn medial meniscus in Plaintiff's left knee, and that Plaintiff's other complaints were caused by preexisting conditions unrelated to this accident.[2] As such, the general damage award would be limited to this injury. We also conclude that an award of $500 in general damages even for this single injury is abusively low. Plaintiff, who was 64 years old at the time of the accident, experienced no troubles walking prior to the slip and fall and was actively remodeling his home. Plaintiff testified that since the accident he has discontinued his remodeling efforts, has a limp and experiences pain when walking due to his knee injury. After sitting for long periods, he must stand still for a few minutes before walking. Plaintiff testified that he takes over the counter pain medications and wakes up during the night from the pain in his knee. In addition, Plaintiff faced the possibility of surgery to repair the torn medial meniscus.
In Shaw v. Russell, 26,618 (La.App.2d Cir. 3/1/95), 652 So.2d 133, this court affirmed a $15,000 general damage award for a 28-year-old plaintiff who sustained knee, back and neck injuries when the bus he was driving was struck by a van. Plaintiff suffered from chondromalacia, a roughening of the cartilage behind the knee cap, and synovitis, inflammation of the tissue lining the knee joint. Plaintiff underwent arthroscopic surgery and was diagnosed with a ten percent permanent physical impairment and loss of physical function to his left leg.
In Gage v. Potts, 94-1542 (La.App. 1st Cir. 4/7/95), 653 So.2d 1183, the jury awarded plaintiff $0 for his injuries sustained in a car accident. Plaintiff was diagnosed with bilateral foraminal stenosis, a tightened or reduced spinal canal through which the nerves pass, a torn cartilage on the outside of his knee and patellofemoral chondromalacia, torn gristle under the knee cap. Plaintiff underwent surgery to repair the knee, which was followed by physical therapy. The appellate court granted plaintiff $20,000 in general damages.
Considering the evidence in the present case, we conclude that Plaintiff is entitled to an award of $12,000 for past and future general damages, subject to the one-third reduction.

Special Damages
Plaintiff contends that the jury abused its discretion in awarding only $2,500 for past medical expenses. He argues that the "jury apparently reduced the past medicals to compensate for what they thought was treatment for unrelated conditions," i.e., the pre-existing degenerative arthritis and diabetic neuropathy.
A plaintiff may ordinarily recover reasonable medical expenses, past and future, which he incurs as a result of an injury. Dowe v. Grady, 540 So.2d 1040 (La.App. 2d Cir.1989). A plaintiff's recovery of medical expenses, however, must be confined to those expenses related to the accident. Gladney v. May, 29,373 (La.App.2d Cir. 5/7/97), 697 So.2d 1022; Phiratsamy v. Pipes, 27,209 (La. App.2d Cir. 8/23/95), 660 So.2d 172.
As stated before, based on the testimony of Drs. Berg and Waddell, the jury could have reasonably concluded that the only injury related to this fall was the injury to the knee. Dr. Berg testified that he did not treat Plaintiff for his knee injury. In addition, Dr. Waddell attributed Plaintiff's other medical problems to conditions which preexisted the accident. Based upon the evidence in the record, the jury could have reasonably found that the majority of Dr. *198 Berg's treatment was not related to any injuries sustained in this accident. Accordingly, we affirm the jury's award for past medical expenses of $2,500.
Plaintiff also complains that the jury erred in failing to award him future medical expenses in the amount of $8,500 to cover the costs of the knee surgery. Even though the possible result of future surgery is unknown and its cost cannot be fixed with precision, future medical expenses are a legitimate item of damages. Guillory v. Avondale Shipyards, 448 So.2d 1281 (La.1984); Dowe v. Grady, supra. A degree of uncertainty is implicit in every quantum issue. The plaintiff, nevertheless, must prove, more probably than not, that these expenses will be incurred. Dowe, supra.
In the present case, Plaintiff had not undergone the surgery at the time of trial. Plaintiff testified that Dr. Waddell had informed him about the need for surgery, but that he did not undergo the procedure because he could not afford it. Dr. Waddell testified that the pain in Plaintiff's knee was caused by three things: the diabetic neuropathy, the degenerative arthritis and the torn medial meniscus. He stated that there was no guarantee that the surgery would alleviate Plaintiff's pain. When asked if the surgery would improve the use or function of Plaintiff's knee, the doctor stated, "Functionally, hopefully he would be better. Once again, you can make no guarantees."
The record indicates that Plaintiff never stated that he would definitely undergo the surgery, and Dr. Waddell cast doubt on what results the procedure would provide Plaintiff. From this evidence, we conclude that the jury did not err in failing to award Plaintiff future medical expenses.

CONCLUSION
For the above reasons, we amend the judgment of the trial court to award Plaintiff $12,000 in general damages for past and future mental and physical pain and suffering, subject to the one-third reduction for Plaintiff's allocation of fault, and, as amended, affirm. The costs of this appeal are assessed equally to the Plaintiff and Defendant.
AMENDED AND, AS AMENDED, AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, GASKINS, CARAWAY and PEATROSS, JJ.
Rehearing denied.
NOTES
[1] Neither party has appealed the jury's allocation of fault and, therefore, any award to Plaintiff will be subject to a one-third reduction.
[2] Plaintiff states in his brief, "Yet at no time was plaintiff asserting a claim for those preexisting conditions."