743 So.2d 857 (1999)
Janice Bone MADISON and James R. Madison, Plaintiffs-Appellants.
v.
Cheryl E. THURMAN, et al., Defendants-Appellees.
No. 32,401-CA.
Court of Appeal of Louisiana, Second Circuit.
October 27, 1999.
*858 Francis C. Broussard, Monroe, Counsel for Appellant, Janice Bone Madison.
Robert A. Lee, Monroe, Counsel for Appellant, James R. Madison.
Phillip T. Deal, Monroe, Counsel for Appellees.
Before BROWN, GASKINS and CARAWAY, JJ.
GASKINS, Judge.
The plaintiffs, Janice and James Madison, appeal from a judgment dismissing their claims for personal injuries against the defendants, Cheryl Thurman and her insurer, State Farm Mutual Automobile Insurance Company, arising out of an auto *859 accident. For the following reasons, we affirm.

FACTS
This accident occurred on March 28, 1995, at about 9:00 p.m., in Monroe on Breard Street, just north of its intersection with Louisville Avenue. The pavement was wet from an earlier rain. At the intersection, Breard Street is a multi-lane road which runs north and south; at the time of the accident, it was unstriped. Louisville is a five-lane road, with two lanes each way east and west and a center turning lane.
Plaintiffs Janice and James Madison were proceeding south on Breard; Mrs. Madison was driving. The two were discussing where to eat; they decided upon a restaurant that required them to turn around and go north on Breard. Mrs. Madison elected to turn around in the parking lot of a business, "Tribal Spirits," on the northeast side of the intersection; the entrance to the business is roughly 90 feet north of the intersection of Breard and Louisville.
At the same time, Cheryl Thurman was driving east on Louisville. She pulled into the turn lane and made a left turn onto Breard, heading north. Just after Ms. Thurman completed this turn, the right front of her car collided with the right rear of the Madison car. Mrs. Madison said that her car was about six feet into the business entrance when the accident occurred and that she did not see Ms. Thurman's vehicle. Mr. Madison did see the headlights of Ms. Thurman's car and yelled a warning to his wife, but said that the warning came too late to avoid the collision. According to Ms. Thurman, she saw the Madison vehicle turn in front of her after she had completed her turn onto Breard. She applied her brakes, but it was too late and the accident was unavoidable.
Soon after the accident, Mrs. Madison suffered pain in her left knee, her arms and lower back, and Mr. Madison suffered back and neck pain. The Madisons sued Ms. Thurman and her insurer, State Farm, on November 13, 1995. The defendants answered the lawsuit and made a reconventional demand against the Madisons alleging that the accident was Mrs. Madison's fault and demanding that she pay any amounts that the court may award Mr. Madison. A subsequent reconventional demand against Mrs. Madison and her insurer, Allstate, sought damages for personal injuries to Ms. Thurman. Allstate responded with a demand against Ms. Thurman for reimbursement of the medical payments it had made to the Madisons as a result of the accident. Ms. Thurman and Allstate settled their reconventional demands leaving only the Madisons' claims against Ms. Thurman for trial.
At trial, each side relied upon an expert accident reconstructionist to explain the event. The plaintiffs' expert was Cameron Douglas, a public information officer with the Louisiana State Police (LSP). Prior to his 4 years of employment with the LSP, Douglas was a Monroe City Police officer for 13 years, where he daily completed traffic accident reports. Douglas explained that these reports required him to record the facts of the accident, but did not ordinarily call for his opinion about the causes of the accident. He said that he had previously completed perhaps two accident reconstructions in his work for the state police. Douglas' qualifications included classroom training at numerous accident reconstruction schools including at least 240 hours of instruction; this case was his first opportunity to testify as an expert.
Douglas indicated that his investigation included a visit to the scene with the Madisons for "a couple of hours" and the taking of measurements of the intersection and accident scene. Douglas concluded that the accident was caused by Ms. Thurman's inattentiveness. He said that when Mrs. Madison began her turn, it would have appeared to her that the Thurman vehicle *860 was still on Louisville Avenue. Douglas reported that it would have taken Mrs. Madison about 2.8 seconds to turn into the parking lot and estimated that Ms. Thurman's vehicle was traveling at least 25 miles per hour when it hit the Madisons' car. He said that if Ms. Thurman had been looking, she would likely have seen the Madison vehicle turning left and that Ms. Thurman "probably" could have either stopped or swerved to avoid the accident.
Defendants' accident reconstruction expert was Alfred Gonzales. Gonzales had been a professional reconstructionist for ten years. He retired from the Louisiana State Police in 1976 as commander of the State Police Training Academy; while there, he designed the curriculum for accident investigation and introduced accident reconstruction into the troopers' training. Gonzales said that he had investigated more than 2,000 traffic accidents during his tenure with the police. Gonzales testified that he had taken numerous courses in accident reconstruction since 1986 and that he had been consulted as an expert between 500 and 600 times. He said that he had been accepted at trial as an expert between 65 and 70 times in various state and federal courts.
Gonzales said that he visited the scene of the accident and had digitized a plat of the intersection for purposes of computer analysis. Using the estimated speeds given at the parties' depositions as a guide, Gonzales calculated that it took Ms. Thurman's car approximately 7.25 seconds to travel from the turn lane on Louisville to the point of collision. Gonzales said that Mrs. Madison ought to have been able to see Ms. Thurman's car the entire time. Of this period, 4.25 seconds elapsed while the car was making the turn, leaving 3 seconds when Ms. Thurman's car was traveling straight on Breard. Of this 3-second period, Gonzales estimated that it would have taken from 0.75 seconds to 1 second for Ms. Thurman to realize that Mrs. Madison was turning across her path, leaving at most 2.25 seconds for Ms. Thurman to react and take action. Gonzales testified that the American Association of State Highway Transportation Officials, A.A.S.H.T.O., uses 2.5 seconds as an average reaction time for all types of roads in all types of weather.
Based upon these figures, Gonzales opined that Ms. Thurman had essentially no opportunity to react to the presence of Mrs. Madison's vehicle in the road ahead of her. Even assuming a 1.5 second reaction time, Ms. Thurman would have had only .5 seconds to .75 seconds to take action based upon her perceptions. Gonzales said that if Ms. Thurman were going 25 miles per hour, it would have taken her 2.27 seconds to bring her car to a stop once she applied her brakes given that the road surface was wet. Gonzales also said that Ms. Thurman would not have been able to steer away from the accident in the available time.
In response to Gonzales' testimony, Douglas restated his opinion that Ms. Thurman was going "at least" 25 miles per hour at the time of the collision because the impact rotated the Madisons' car over a curb; Douglas also stated that Gonzales did not take this into account.
Based upon all of this evidence, the trial court rejected the plaintiffs' demands, finding Mrs. Madison to be 100% at fault for the accident. In its reasons for judgment, the court stated:
The Court has carefully reviewed all of the evidence presented in this case. The Court finds the testimony of defendants' expert to be of greater quality than that offered in opposition to it. Mr. Gonzales has much more experience in accident reconstruction than does Mr. Douglas. The court does not in any way attempt to question Douglas's opinion. The call here is simply that Gonzales's opinion is sounder and more reliable.
On August 17, 1998, the trial court filed a judgment dismissing the plaintiffs' demands with prejudice, at their cost. From *861 the judgment in defendants' favor, plaintiffs now appeal.

DISCUSSION
A district court's findings of fact will not be disturbed on appeal unless the reviewing court finds that they are clearly wrong or manifestly erroneous. Stobart v. State, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). Under the manifest error standard, the linchpin is whether the trial court's findings are reasonable; even if the appellate court feels its own evaluation of the evidence is more reasonable, the trial court's findings cannot be reversed if they are in fact reasonable. Lewis v. State, Through Department of Transportation and Development, 94-2370 (La.4/21/95), 654 So.2d 311. In other words, the appellate court may not reverse simply because it is convinced that had it been sitting as a trier of fact it would have ruled differently. Lewis v. State, supra. A finding of fact by a trial court should be upheld unless it is clearly wrong. The manifest error rule also regulates allocations of fault. Clement v. Frey, 95-1119 (La.1/16/96), 666 So.2d 607; Donavan v. Jones, 26,883 (La.App.2d Cir.6/21/95), 658 So.2d 755, writs denied, 95-1786, 95-1891 (La.11/3/95), 661 So.2d 1379.
A trial court may evaluate expert testimony by the same principles that apply to other witnesses and has great discretion to accept or reject expert or lay opinion. The weight to be accorded to testimony of experts depends largely on their qualifications and the facts on which they base their opinions. Morris v. Allstate Ins. Co., 25,148 (La.App.2d Cir.2/23/94), 632 So.2d 1209, writ denied, 94-1044 (La.6/17/94), 638 So.2d 1099; Durkee v. City of Shreveport, 587 So.2d 722 (La.App. 2d Cir.1991), writ denied, 590 So.2d 68 (La.1991).
We find no manifest error in the trial court's allocation of the entirety of fault to Mrs. Madison. Mr. Gonzales' explanation of the accident was clearly presented and offered a reasonable interpretation of the physical evidence. Particularly with regard to Ms. Thurman's likely reaction time, his explanation showed how Ms. Thurman could have completed her turn, but been unable to stop or swerve before hitting the Madison vehicle. The driveway to Tribal Spirits is close to the intersection of Louisville and Breard, and Ms. Thurman had only a short distance in which to see and react to the Madisons' car. In addition, the accident occurred at night, while the pavement was wet.
We also note that the intersection lanes were not marked at the location of this accident. Therefore, we discount the plaintiffs' argument that Ms. Thurman violated any traffic laws, such as La. R.S. 32:101, by making an unusually wide turn. Further, we also discount the plaintiffs' argument that the doctrine of preemption applies in this case. This doctrine is generally applied in cases of intersectional collisions. Before one can benefit from the doctrine of preemption, he must establish that he entered the intersection first, that his entry was made after first ascertaining that the intersection traffic was so far removed as to allow his passage without causing the other vehicle to make an emergency stop, and that he entered the intersection with the bono fide belief and expectation that he could safely cross. Silva v. Calk, 30,085 (La.App.2d Cir.12/10/97), 708 So.2d 418. In this case, the collision was 90 feet from an intersection. Further, the plaintiffs failed to show that Mrs. Madison turned into the parking lot after reasonably ascertaining that no traffic was coming and that it was safe to do so.
We have reviewed the joint photo exhibits and they support Gonzales' conclusions. Of the two experts, Gonzales was by far the more experienced. We do not believe that Gonzales' failure to incorporate the presence of the curb on Breard into his impact speed calculation is sufficient to undermine the trial court's decision *862 to credit Gonzales' testimony over Douglas' testimony.

CONCLUSION
Because the trial court's decision was reasonable to credit the testimony of Ms. Thurman and Mr. Gonzales over the testimony of the plaintiffs and their expert, we find no reversible error. The judgment of the trial court rejecting the plaintiffs' demands is affirmed at the plaintiffs' cost.
AFFIRMED.