750 So.2d 483 (2000)
Larry OREA and Huey McCray, Plaintiff-Appellant,
v.
Seth P. SCALLAN and Allstate Indemnity Company, Defendant-Appellee.
No. 32,622-CA.
Court of Appeal of Louisiana, Second Circuit.
January 26, 2000.
*486 John Milkovich, Shreveport, Counsel for Appellant.
Rountree, Cox, Guin & Achee by Billy J. Guin, Jr., Counsel for Appellee Allstate Indemnity Co.
Seth P. Scalla, in pro. per.
Before STEWART, GASKINS and PEATROSS, JJ.
GASKINS, J.
The plaintiffs, Larry Orea and Huey McCray, appeal from a trial court judgment granting them recovery for personal injuries, property damage and court costs arising from an auto accident. The plaintiffs contend that the awards are inadequate. They also object to the introduction into evidence of Mr. Orea's pretrial deposition. We amend in part and, as amended, affirm the trial court judgment.

FACTS
On October 31, 1996, Larry Orea was southbound on Benton Road, near its juncture with I-20, in his 1986 Mazda pickup, with Huey McCray as his passenger. Seth P. Scallan was also southbound in a 1989 Oldsmobile. Scallan veered into Orea's lane and made contact with the vehicle, forcing Orea onto a concrete median. According to Orea, his vehicle crossed the median, was almost hit by an 18-wheeler, *487 and then veered back across the median. Scallan claimed to be unaware that an impact occurred and drove away. Orea and McCray followed Scallan from Bossier to Shreveport. Scallan then returned to Bossier and a police report concerning the accident was completed.
The plaintiffs filed suit against Scallan and his insurer, Allstate Indemnity Company, asserting that the accident was caused solely by the negligence of Scallan. Allstate requested a jury trial. On January 21, 1998, the plaintiffs stipulated that they would seek no more than $50,000.00 in damages each, "the jurisdictional amount for jury trials."
The plaintiffs then filed a motion for partial summary judgment, claiming that the accident was caused solely by the fault of Scallan. On January 20, 1998, the trial court signed a judgment in favor of the plaintiffs, finding that Scallan was solely at fault in causing the collision. The matter was then tried on the issue of damages alone. On October 30, 1998, the trial court filed written findings of fact and reasons for judgment. The court found that the accident occurred on October 31, 1996 on the Benton Road entrance ramp to I-20. Orea was going south in the left lane and McCray was a passenger in his vehicle. Scallan was also headed south, slightly ahead, in the right lane. The accident occurred when Scallan merged to the left, grazing the outside mirror on the passenger side of Orea's vehicle. The court found that the outside mirror was loosened and the upper arm shaft for the control arm to the left front wheel was damaged when the vehicle struck the median. Orea was awarded $131.85 to replace the upper arm shaft, $79.95 for a front end alignment, and $26.50 for wheel balancing.
The court found that Orea suffered soft tissue injuries to his ribs, neck and back. Orea initially sought treatment at the emergency room of the Marshall Regional Medical Center on November 1, 1996. He was awarded $673.69 for emergency room costs. Orea was also treated by a chiropractor from November 4, 1996 to January 8, 1997 for those injuries and was awarded $2,872.00 for chiropractor fees. He was also granted a general damage award of $3,500.00.
McCray sustained minor injuries and was treated by a chiropractor from November 1, 1996 until December 16, 1996. He was awarded $1,565.00 for chiropractor fees and $2,500.00 in general damages.
The court found that no other damages were proven. Allstate was to pay court costs and the court specified that if the parties are unable to agree, any expert witness fees or other expenses to be taxed as court costs should be addressed by filing a contradictory rule within fifteen days of service of notice of the filing of judgment.
On November, 18, 1998, the plaintiffs filed a motion for court costs, seeking to recover the following amounts: $17.50 in Federal Express fees to recover Orea's medical records from a chiropractor who had moved out of state; $126.00 for a copy of Orea's pretrial deposition which was filed into evidence by the defendants; $21.11 for color copies of the defendant's photos used at trial; $14.28 for film and development for photos used at trial; $15.37 for display boards used in presenting the plaintiffs' exhibits; $28.15 for Orea's medical records from Highland Hospital, $100.00 to Orea's father, an artist, for a diagram of the accident scene used at trial; $350.00 in expert witness fees for William Whitfield, an automotive expert; and $1,625.00 in expert witness fees for Dr. Graham, a dentist. The defendants opposed the plaintiffs' motion for court costs, asserting that the amounts claimed were excessive.
On January 7, 1999, the trial court filed a judgment awarding the plaintiffs $28.15 for medical records from Highland Hospital, $200.00 in expert witness fees for William Whitfield, and $500.00 for the expert testimony of Dr. David Graham. The plaintiffs appealed the trial court judgment, *488 asserting that the damages and court costs awarded to them were inadequate and that the trial court erred in allowing into evidence the discovery deposition of Larry Orea.

STANDARD OF REVIEW
A district court's findings of fact will not be disturbed on appeal unless the reviewing court finds that they are clearly wrong or manifestly erroneous. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880 (La. 1993); Rosell v. ESCO, 549 So.2d 840 (La. 1989). Under the manifest error standard, the linchpin is whether the trial court's findings are reasonable; even if the appellate court feels its own evaluation of the evidence is more reasonable, the trial court's findings cannot be reversed if they are in fact reasonable. Lewis v. State Through Department of Transportation and Development, 94-2370 (La.4/21/95), 654 So.2d 311. In other words, the appellate court may not reverse simply because it is convinced that had it been sitting as a trier of fact it would have ruled differently. Lewis v. State, supra. A finding of fact by a trial court should be upheld unless it is clearly wrong. Madison v. Thurman, 32,401 (La.App.2d Cir.10/27/99), 743 So.2d 857.
When findings of fact are based upon evaluations of witness credibility, the manifest error/clearly wrong standard demands great deference to the trial court. Only the fact finder can be aware if the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, supra; Turner v. State Farm Mutual Automobile Insurance Company, 32,423 (La. App.2d Cir.10/27/99), 743 So.2d 924.
A trial court may evaluate expert testimony by the same principles that apply to other witnesses and has great discretion to accept or reject expert or lay opinion. The weight to be accorded to testimony of experts depends largely on their qualifications and the facts upon which they base their opinions. Madison v. Thurman, supra.

OREA'S CLAIMS
The plaintiffs contend that Larry Orea was entitled to a higher award for both general and special damages than that awarded by the trial court.

Property Damage
Orea claims that the trial court failed to adequately compensate him for damage to his truck. Orea argues that after the impact with Scallon's vehicle, Orea's truck traversed the concrete median twice. He asserts that both the right and left upper arm shafts on the suspension system of his vehicle were damaged. According to Orea, not only did both the upper arm shafts need replacing, but the surrounding components of the suspension assembly should also be replaced. Orea contended that two of his tires and rims were damaged and that the transmission and braking systems were impaired. Orea urged that the total amount necessary to repair the suspension system is $1,263.80, rather than the $238.30 awarded by the trial court.[1]
Orea testified that after the accident, he was able to drive the truck to Shreveport in pursuit of Scallan, then drove back to Bossier to complete the police report. Orea then drove the vehicle to his home in Waskom, Texas. He claimed that some of his tires went flat the day after the accident and claimed that he began to have transmission problems within 2-3 weeks after the accident. However, regarding *489 the tires, it was unclear whether Mr. Orea replaced them.
Orea called as an expert witness William Whitfield, who had extensive experience in repairing Mazdas. Mr. Whitfield testified that the both upper arm shafts, a part of the suspension system on Orea's truck, were bent in the collisions with the median. He stated that the damage is difficult to detect with the unaided eye, but that the bend is evidenced in the wear on the thread pattern of the upper arm shaft. Mr. Whitfield testified that when replacing upper arm shafts, it is best to replace a number of other parts connected with the upper arm shafts, including the upper arm assembly, the upper ball joint, the knuckle, the retainer nut and cotter pin, the idle, the wheel and the shock absorber. He stated that some of these parts can be damaged during the process of replacing the upper arm shafts.
Orea claimed that his tires deflated the day after the accident. Mr. Whitfield said that an impact such as that sustained in this case might have caused the tires to develop a slow leak. Mr. Whitfield stated the it would cost approximately $55.00 per tire to replace the tires on the left side of the vehicle. He further testified that a front end alignment and wheel balancing would be necessary.
Mr. Whitfield testified that he saw some damage on the tire rims. However, at trial, he could not remember what kind of damage he saw. He did not provide an estimate for repairing or replacing the rims, because they were custom rims which were not sold by the Mazda dealership where he was employed. Orea filed the rims into evidence and pictures of the rims were substituted later. Upon our review of the record, the rims do not appear to have sustained the degree of damage which would necessitate replacement. At most, they bear some scratches.
Neither Mr. Whitfield nor any other expert testified regarding the existence or extent of damage to the truck's transmission or brakes. Further, Orea failed to show that any such problem was attributable to this accident and he did not show the cost of repairs.
Barron Powers, an Allstate claims adjuster, testified that he also examined the upper arm shafts in this case. He stated that the condition he observed was due to wear, as opposed to damage caused in this accident. He stated that he has never seen damage in this area where one side or the whole front of the vehicle was not destroyed.
Mr. Whitfield testified in rebuttal that the upper arm shafts are bent and that the damage observed was not caused by normal wear and tear. He also disputed Mr. Powers' testimony that in order to bend the upper arm shaft, the entire front of the vehicle would have to be destroyed.
The trial court awarded Orea damages sufficient to replace the upper arm shaft only, with no additional parts. The trial court also made an award for wheel balancing and for front end alignment. The court did not allow recovery for additional parts of the system or for tire rims and transmission repairs. Apparently the trial court accepted as credible Mr. Whitfield's testimony that upper arm shaft damage occurred in this case, but rejected that part of his testimony specifying that replacement of the upper arm shafts would require replacement of the other parts. We can see no reasonable basis in the record for the trial court's rejection of these elements of damages. Testimony, both supporting and contradictory, was introduced as to whether the tires, tire rims, and transmission were damaged in the accident. The trial judge made a reasonable factual determination that they were not damaged, and this court, therefore, has no grounds to reverse. Accordingly, we amend the trial court judgment to allow Orea a total of $1,263.80 in property damages, as requested, to properly repair the suspension system on his vehicle. The trial court judgment rejecting others items of claimed property damage is affirmed.

*490 Medical Expenses
Orea claims that the trial court failed to adequately compensate him for his medical expenses. He had previously been in a serious auto accident in 1990. In that accident, he sustained multiple injuries, including a closed head injury and was in a coma for several days. After that accident, Orea suffered headaches "every day or every other day." In pretrial discovery, Orea claimed that he had broken his jaw in the 1990 accident. However, at trial this appeared to be an error and no documentation of a jaw fracture was presented. The plaintiff claimed that, in the present accident, in addition to soft tissue injuries to his back, neck and ribs, he also sustained some cracked teeth and now has pain in his temporomandibular joint (TMJ) as a result of this accident. He claims that he established $9,397.69 in past and future medical expenses. He asserts that the trial court's award of $3,545.69 was abusively low.
A plaintiff may ordinarily recover reasonable medical expenses, past and future, which he incurs as a result of an injury. A plaintiffs recovery of medical expenses, however, must be confined to those expenses related to the accident. Whitthorne v. Food Lion, Inc., 30,105 (La. App.2d Cir.1/21/98), 706 So.2d 193. Whether the accident caused the plaintiffs injuries is a factual question which should not be reversed on appeal absent manifest error. Boggs v. Voss, 31,965 (La.App.2d Cir.6/16/99), 741 So.2d 139.
On the day following the accident, Orea sought treatment in the emergency room of the Marshall Regional Medical Center for headache and blurred vision. He also complained of neck, back and rib injuries. Orea was treated by Dr. Eric Berg for his soft tissue injuries from November 4, 1996 to January 8, 1997. He did not seek medical treatment for these injuries again until August 25, 1998. On that date, Dr. Scott Waltemate, a chiropractor, found that Orea had ligamentous instability resulting from an unresolved hyperflexion/hyperextension injury. According to Dr. Waltemate, it was "very probable" that he is now experiencing a chronic situation as a result of fibrosing and scarring of the involved joints.
Orea claimed that in the present accident, he struck his head on the interior of his truck. He contends that immediately after the accident, he began having jaw pain, muscle spasms in his jaw, difficulty chewing, and he experienced clicking in the jaw joint. He also claims that his headaches have worsened. Orea sought treatment from Dr. Graham, a dentist, for broken teeth and TMJ pain. However, he did not consult Dr. Graham until November 14, 1997, over a year after the accident, for filling of a tooth he claims was damaged in the accident. Orea did not obtain an evaluation regarding his jaw complaints until August 25, 1998, shortly before the trial of this matter.
Dr. David Graham testified on Orea's behalf at trial. According to Dr. Graham, the accident caused Orea to have TMJ problems and resulted in some fractured teeth. Dr. Graham filled a tooth for Orea more than one year after the accident. Orea then did not consult Dr. Graham for evaluation of his jaw pain until August 25, 1998, approximately one year and ten months after the accident. Dr. Graham testified that he was aware of Orea's previous closed head injury in the 1990 accident. However he believed that when Orea struck his head on the interior of the truck in the present accident, his jaw was jammed and this triggered the TMJ problem. Dr. Graham testified that the persistent symptoms of joint clicking and pain indicate a long standing, moderate case of TMJ disorder that had worsened over time.
Dr. Graham stated that he charged $80.00 for filling Orea's tooth, and $380.00 for a consultation concerning the TMJ on August 25, 1998. He stated that Orea needs to have bridge work to correct the problem which would cost $4,725.00. He *491 also stated that Orea might need additional dental work in the future.
Based upon the record before us, we find that the trial court did not commit manifest error in rejecting Orea's claim to recover for dental work and treatment of TMJ disorder and in rejecting his claim for recovery for the chiropractic evaluation by Dr. Waltemate. As stated above, it is within the province of the trial court to accept or reject the testimony of an expert witness and that finding will not be reversed in the absence of manifest error. Orea admitted that he had a prior closed head injury which resulted in frequent headaches before this accident. Further, even though Orea claims that immediately after this accident his headaches worsened and that his jaw began to hurt soon after the accident, it was an extended period of time after the incident before he sought any type of treatment for this condition or for the teeth he claims were damaged in the accident. Given the significant length of time which passed between the accident and the time Orea sought treatment, we do not find that the trial court was manifestly erroneous or clearly wrong in finding that these injuries were not shown to have been caused by this accident. We also find that the trial court did not err in rejecting Dr. Waltemate's opinion that Orea had chronic soft tissue injuries resulting from this accident.

General Damages
Orea asserts that the trial court award for general damages was abusively low. Orea claims that he was in great fear of being struck by an 18-wheeler and also, in light of his injuries, he is entitled to a higher general damage award than the $3,500.00 given by the trial court. This argument is without merit.
General damages are those that may not be fixed with pecuniary exactitude. Such damages involve mental and physical pain and suffering, inconvenience, the loss of physical enjoyment, or other losses of lifestyle that cannot be definitively measured in monetary terms. Caldwell v. Smith, 25,956 (La.App.2d Cir.8/17/94), 641 So.2d 1011. In appellate review of general damages, the initial inquiry is whether the award for the particular injuries and their effects under the circumstances on the particular injured person is a clear abuse of the fact finder's broad discretion. Youn v. Maritime Overseas Corporation, 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
In determining whether the trier of fact abused its discretion in making an award, the evidence must be viewed in the light most favorable to the prevailing party. Youn v. Maritime Overseas Corporation, supra; Terry v. Sutherlands Lumber Company, 32,345 (La.App.2d Cir.9/24/99), 742 So.2d 756. Only after a review of the record discloses an abuse of discretion may the appellate court determine that the award is either excessive or insufficient. If the award is abusively low, it is raised to the lowest amount the trier of fact could reasonably have awarded. If the award is abusively high, it is reduced to the highest amount the trier of fact could have awarded. Whitthorne v. Food Lion, Inc., supra.
It is not disputed in this case that Orea suffered injuries. The record shows that Orea was treated the day after this accident for pain in the lower back, neck and ribs. On November 4, 1996, Orea sought chiropractic treatment for pain in his back, neck, and headaches. He was treated through January 8, 1997. He did not seek treatment again until August 1998, shortly before the trial of this matter. Also, as discussed above, the trial court rejected Orea's claim that this accident caused him to have TMJ problems or other dental damage and we affirm that portion of the trial court's decision. In light of these factors, we find that the general damage award was sufficient.

MCCRAY'S GENERAL DAMAGES
The plaintiffs also allege that the general damage award to Huey McCray *492 was inadequate. The plaintiffs assert that McCray had his right arm outside the truck window when Scallon merged to the left and McCray had to quickly jerk his arm back into the vehicle, putting him in fear of losing his arm. McCray also claims he suffered back injuries in the accident and pain in his knee as a result of striking the interior of the vehicle. McCray claims that he is no longer able to run as a result of muscle spasms.
The record shows that McCray was involved in auto accidents in 1992 and in 1994 as well as an accident in April 1996 and one in June 1996, prior to the present accident. In all cases, he received chiropractic treatment and claimed to have recovered from those injuries prior to the present accident.
McCray was treated by a chiropractor from November 1, 1996 until December 16, 1996. At that time, the chiropractor, Dr. James A. Wiseman, felt that McCray's condition had improved sufficiently that he could be seen on an "as needed" basis. According to Dr. Wiseman, McCray did well throughout his treatment and ultimately was having only mild occasional low back pain. McCray stated that he did not lose any time from work as a result of the present accident. He was granted an award by the trial court for his chiropractic treatment. At trial, McCray claimed that he still experienced back pain 2-3 times per week, but there was no showing that he had sought additional treatment from any source. Given the nature of McCray's injuries and the fact that they resolved to a large extent within several weeks of the accident, we find that the trial court did not abuse its discretion in the general damage award made.

COURT COSTS
The plaintiffs assert that the trial court erred in failing to award reasonable court costs. The plaintiffs claimed entitlement to $17.50 for Federal Express mailing of medical records, $126.00 for a copy of Orea's deposition, $21.11 for copies of the defendant's photographs used at trial, $14.28 for film processing for photographs used by the plaintiffs at trial, $28.15 for medical records dealing with the Orea's 1990 accident, $15.37 for display boards and $100.00 for a diagram. The plaintiffs also claimed $350.00 in expert witness fees for Mr. Whitfield and $1,625.00 for Dr. Graham. The trial court allowed the plaintiffs to recover $28.15 for medical records, $200.00 for Mr. Whitfield and $500 for the testimony of Dr. Graham. The plaintiffs assert that the trial court erred in failing to award all costs claimed.
La. C.C.P. art. 1920 provides:
Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
La. R.S. 13:3666 provides:
A. Witnesses called to testify in court only to an opinion founded on special study or experience in any branch of science, or to make scientific or professional examinations, and to state the results thereof, shall receive additional compensation, to be fixed by the court, with reference to the value of time employed and the degree of learning or skill required.
B. The court shall determine the amount of the fees of said expert witnesses which are to be taxed as costs to be paid by the party cast in judgment either:
(1) From the testimony of the expert relative to his time rendered and the cost of his services adduced upon the trial of the cause, outside the presence of the jury, the court shall determine the amount thereof and include same.
(2) By rule to show cause brought by the party in whose favor a judgment is rendered against the party cast in judgment for the purpose of determining the amount of the expert fees to be paid by *493 the party cast in judgment, which rule upon being made absolute by the trial court shall form a part of the final judgment in the cause.
C. In either manner provided in Subsection B, the court shall also determine and tax as costs, to be paid by the party cast in judgment, the reasonable and necessary cost of medical reports and copies of hospital records.
D. In all civil cases in which the trial court, on its own motion or on motion of a party, has appointed a person who is registered as a professional land surveyor, pursuant to R.S. 37:693(B)(4), to be called as an expert to assist it in the adjudication of any case in which professional land surveying skills may aid the court, the court shall make arrangements for the timely payment of reasonable and customary fees for the services sought to be rendered.
La. R.S. 13:4533 provides:
The costs of the clerk, sheriff, witness' fees, costs of taking depositions and copies of acts used on the trial, and all other costs allowed by the court, shall be taxed as costs.
The jurisprudence shows that the trial judge is accorded great discretion in awarding costs (including expert witness fees, deposition costs, exhibit costs and related expenses). Where a party's claimed costs included duplication costs of various documents, medical reports, postage, telephone charges and food and lodging for that party during the trial, the court did not err in refusing to allow full recovery for all costs claimed. Dupre' v. Maison Blanche, Inc., 97-0652 (La.App. 1st Cir. 4/8/98), 712 So.2d 567, writ denied, 98-1239 (La.6/19/98), 721 So.2d 471.
Similarly, in the present case, we do not find that the trial court abused its discretion in refusing to allow the plaintiffs to recover for mailing costs, copies of photographs, film processing, display boards and preparation of a diagram. Further, the court did not err in refusing to allow the plaintiffs to recover the cost of a copy of Orea's pretrial deposition. The deposition was taken by the defendants who introduced their copy of the document into evidence.
We also find that the trial court did not err in failing to award the total amount claimed by the plaintiffs in expert witness fees. Witnesses called to testify as expert witnesses shall be compensated for their services, with the amount to be determined by the court and taxed as costs to be paid by the party cast in judgment. La. R.S. 13:3666; Spillers v. ABH Trucking Company, Inc., 30,332 (La. App.2d Cir.4/13/98), 713 So.2d 505, writs denied, 98-1313 (La.6/26/98), 719 So.2d 1063, 98-1327 (La.6/26/98), 719 So.2d 1287. An expert witness is entitled to reasonable compensation for his court appearance and for his preparatory work. McGee v. Miears, 516 So.2d 1241 (La.App. 2d Cir. 1987). Under La. R.S. 13:3666 and La. C.C.P. art.1920, the trial judge has great discretion in awarding and fixing costs and expert fees. A trial court's assessment of costs can be reversed by an appellate court only upon a showing of abuse of discretion. Maynor v. Vosburg, 25,922 (La.App.2d Cir.11/28/94), 648 So.2d 411, writ denied, 95-0409 (La.4/28/95), 653 So.2d 590. The trial judge is not required to set an expert fee at the amount charged by the expert witness. Stephens v. Town of Jonesboro, 25,715 (La.App.2d Cir.8/19/94), 642 So.2d 274, writs denied, 94-2351, 94-2557, 94-2577 (La.11/29/94), 646 So.2d 400.
In this case, the plaintiffs claimed that Mr. Whitfield spent a total of 9.25 hours preparing for and testifying in this case. However, they sought recovery for only seven hours at $50.00 per hour. The trial court awarded the plaintiffs $200.00 in expert witness fees for Mr. Whitfield's efforts in this case. Mr. Whitfield's affidavit of expenses indicates that he spent 45 minutes examining the truck, one and one-half hours for testimony and travel time in the case in chief, one hour for testimony and travel time for rebuttal, and six hours *494 consulting with the plaintiffs and their attorney prior to and during trial. Based upon our review of the record, we find that the plaintiffs have failed to show that this award constituted an abuse of the trial court's discretion.
Regarding the expert testimony of Dr. Graham, the plaintiffs claimed he spent four hours and forty-five minutes reviewing records and consulting with the plaintiffs' attorney. Dr. Graham spent one hour and forty-five minutes for testimony and travel to and from court, at a rate of $250.00 per hour. As stated above, the trial court is not required to reimburse experts in the amounts charged to their clients. We find that the trial court did not abuse its discretion in awarding an expert witness fee of $500.00 for Dr. Graham's services.

OREA'S DEPOSITION
The plaintiffs also assert that the trial court erred in allowing the admission of Orea's deposition. They recognize that the deposition was introduced by the defendants for impeachment purposes, but contend that the deposition should not have been admitted in its entirety. According the plaintiffs, "The law nowhere authorizes the wholesale introduction of the entirety of a discovery deposition of a party present at trial, without affording him an opportunity to address any perceived testimonial inconsistencies or ambiguities." This argument is without merit.
This is governed by La. C.C.P. art. 1450 which provides in pertinent part:
A. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the Louisiana Code of Evidence applied as though the witnesses were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:

(1) Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness.
(2) The deposition of a party or of anyone who at the time of taking the deposition was an officer, director, or managing agent, or a person designated under Article 1442 or 1448 to testify on behalf of a public or private corporation, partnership, or association, or governmental agency which is a party may be used by an adverse party for any purpose. [Emphasis supplied.]
Some courts of this state have construed this statute and its predecessor statute, La. C.C.P. art. 1428, to be applied as written to allow a party to admit the deposition of an adverse party for any purpose and in some instances, without supplying to the court a reason for admission. See Verrett v. Preston, 374 So.2d 121 (La.App. 1st Cir.1979); Fire and Casualty Insurance Company of Connecticut v. Garrick, 312 So.2d 103 (La.App. 1st Cir.1975), writ denied, 313 So.2d 845 (La.1975); Hall v. Liberty Mutual Insurance Company, 153 So.2d 553 (La.App. 1st Cir.1963), writ refused, 244 La. 1006, 156 So.2d 57 (1963); Menard v. Travelers Insurance Company, 240 So.2d 390 (La.App. 3d Cir.1970). However, this court has traditionally construed this provision more strictly. In Harrison v. State, Department of Highways, 375 So.2d 169 (La.App. 2d Cir.1979), we found that the provision created discretion in the trial court to refuse to admit into evidence the discovery deposition of an adverse party when it is repetitious of matters contained in the record. In that case, the adverse party admitted making statements contained in the deposition. Similarly, in Robledo v. Orr Motors of Louisiana, Inc., 582 So.2d 892 (La.App. 2d Cir.1991), the plaintiff also admitted making the statements contained in the deposition. This court found that the defendant could not introduce the plaintiff's deposition prior to cross-examining him because the foundation for impeachment had not first been laid.
These cases are distinguishable from the facts of the present case. Here, on numerous *495 occasions, when Orea was questioned on cross-examination about statements he made in his discovery deposition, he did not acknowledge those statements, but said that he did not know or could not remember. Under such circumstances, the deposition, in its entirety, was properly admitted against him for impeachment purposes. Also, Orea was given ample opportunity at trial to explain his answers. The deposition was not admitted without, as Orea claims, affording him an opportunity to address any perceived testimonial inconsistencies or ambiguities.

CONCLUSION
For the reasons stated above, we amend that portion of the trial court judgment regarding repairs to the truck belonging to Larry Orea. We vacate the trial court's damage award of $238.30, and we order that the defendants, Seth P. Scallan and his insurer, Allstate Indemnity Company, pay unto Larry Orea the total sum of $1,263.80 to repair this vehicle. The judgment of the trial court is affirmed in all other respects. Costs in this court are assessed one-half to the plaintiffs and one-half to the defendants.
AMENDED AND AS AMENDED, AFFIRMED.
NOTES
[1] We note that the amount claimed by the plaintiffs to repair Orea's vehicle does not include tires, rims, transmission, or brakes.