945 So.2d 905 (2006)
ALGABAL, INC., Plaintiff-Appellee
v.
CENTRAL OIL AND SUPPLY CO., Defendant-Appellant.
No. 41,656-CA.
Court of Appeal of Louisiana, Second Circuit.
December 13, 2006.
Snellings, Breard, Sartor, Inabnett & Trascher, L.L.P., by Wendy E.W. Giovingo, Monroe, for Appellant.
Mulhearn & Smith, by Leroy Smith, Jr., Tallulah, for Appellee.
Before BROWN, LOLLEY, and SEXTON (Pro Tempore), JJ.
*906 BROWN, Chief Judge.
In this breach of contract action, defendant, Central Oil & Supply Corporation, appeals from the trial court's judgment awarding plaintiff, Algabal, Inc., damages and further denying defendant's request for damages for lost gasoline sales and injury to the leased property. For the reasons set forth below, the judgment of the trial court is affirmed.

Facts
On May 1, 2002, plaintiff, Algabal, Inc., leased from defendant, Central Oil & Supply Corporation, two convenience store properties, one in Ruston, which is in Lincoln Parish, and the other in Richwood, which is in Ouachita Parish. The lease agreement provided that Algabal would purchase from Central Oil the inventories in the stores, and Central Oil would provide gasoline on consignment and collect the proceeds from the gasoline sales in lieu of rent. In 2004, Central Oil filed eviction proceedings on the Richwood property in Ouachita Parish. This action caused the parties to begin negotiations to settle their differences. The parties agreed to terminate both leases. Agreements were signed on June 28 and 29, 2004, at the law offices of Algabal's attorney in Madison Parish. The agreements provided for Central Oil's purchase of Algabal's inventory located at each property "at retail prices minus twenty percent in accordance with standard industry practices." At Algabal's insistence, the agreements set specific dates for valuation of the inventories.
T.H. Jones valued the inventory at the Richwood store on June 29, 2004, and after some negotiations, Central Oil paid Algabal, and the parties agreed, via a "Hold Harmless and Management Agreement," that AANH, Inc., would be allowed to manage the Richwood store under Algabal's operating permits until AANH, Inc., could obtain its own permits.
The Ruston termination agreement contained language not found in the Richwood termination agreement. In particular, this language stated that:
Inventory shall be taken on the 6th day of July, 2004, at ___ a.m. and paid for immediately thereafter. Gasoline shall be paid out of escrowed monies prior to disbursement. (Emphasis added).
The Ruston agreement also provided that:
This agreement shall be effective the date AANH, Inc. receives its permits from Alcohol and Beverage Control and obtains all other necessary permits as may be required. (The Effective Date).
We note, however, that AANH, Inc., backed out of its agreement to take over the Ruston store.
On July 6, 2004, at Algabal's direction, an inventory of the Ruston premises was conducted by T.H. Jones. The value placed on the inventory by Mr. Jones was $101,803.59. Alleging that Central Oil breached the terms of the contract by not appearing for the inventory and immediately paying thereafter, Algabal, the next day, July 7, 2004, instituted the instant action in Madison Parish against Central Oil, seeking the amount as appraised by T.H. Jones for the inventory in the Ruston convenience store. At this time, Algabal closed and abandoned the store. Testimony, however, indicated that Algabal continued to pay the utility bill for two or three months thereafter.
Central Oil apparently did nothing until September 2, 2004. At that time, Central Oil had Barbara Whittington conduct a second inventory. Ms. Whittington valued the inventory at $66,101.34. Ms. Whittington testified that the store was overstocked and took into account that items were overpriced. She testified that typically a store of this size would maintain an inventory of $45,000 to $50,000.
*907 In its answer and reconventional demand filed on September 10, 2004, Central Oil sought damages arising out of Algabal's abandonment of the Ruston property, including but not limited to lost profits from gasoline sales and expenses necessary for maintenance and repair of the premises. Five days later, Central Oil filed an action in Lincoln Parish seeking to evict Algabal from the Ruston property. A judgment of eviction was rendered on October 21, 2004, and a writ of sequestration was issued and executed by the Lincoln Parish Sheriff's Office. Central Oil was deemed the keeper of the sequestered property; all inventory which was not spoiled remained under sequestration. At this time Central Oil finally took possession of the property.
A bench trial was held on September 29, 2005, and on January 20, 2006, the trial court rendered judgment in favor of Algabal and against Central Oil ordering defendant to pay to Algabal $38,881.07, together with legal interest thereon from date of judicial demand. This represents Barbara Whittington's valuation, $66,101.34, less 20 percent or $13,220.27, which is $52,881.07, less a credit of $14,000 owed Central Oil for gasoline sales. Thus, the judgment against Central Oil was for $38,881.07. Judgment in favor of Central Oil was rendered maintaining its writ of sequestration on the movable property in the Ruston convenience store and recognizing its lessor's privilege thereon. Nothing was mentioned in the trial court's opinion or judgment concerning Central Oil's claim for lost income or maintenance and repair expenses. We note that in its reconventional demand Central Oil only prayed for a recognition of its writ of sequestration and its privilege.
It is from this judgment that Central Oil has appealed.

Discussion
The Value of the Inventory
A district court's findings of fact will not be disturbed on appeal unless the reviewing court finds that they are clearly wrong or manifestly erroneous. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). Under the manifest error standard, the criterion is whether the trial court's findings are reasonable; even if the appellate court feels its own evaluation of the evidence is more reasonable, the trial court's findings cannot be reversed if they are, in fact, reasonable. Lewis v. State through Department of Transportation and Development, 94-2370 (La.04/21/95), 654 So.2d 311. In other words, the appellate court may not reverse simply because it is convinced that had it been sitting as a trier of fact it would have ruled differently. Orea v. Scallan, 32,622 (La.App.2d Cir.01/26/00), 750 So.2d 483. A finding of fact by a trial court should be upheld unless it is clearly wrong. Madison v. Thurman, 32,401 (La.App.2d Cir.10/27/99), 743 So.2d 857.
That Central Oil was contractually bound to purchase the inventory in the Ruston Store is not disputed.
What is controverted by Central Oil is the appropriate value of the merchandise in the Ruston store. The trial court considered three possible values for the inventory: the July 6, 2004, appraisal by T.H. Jones in the amount of $101,803.59; the September 2, 2004, appraisal by Barbara Whittington in the amount of $66,101.34; and Ms. Whittington's testimony that the typical value of an inventory for a store the size of the Ruston store was between $45,000 and $50,000. Central Oil argues that because plaintiff "stuffed" the store, that is, that the inventory *908 tripled in one month between June and July 2004, and inflated the prices of merchandise, the court should have used the typical inventory for a store of that size. According to defendant, the "usual" inventory was what was contemplated in the phrase "standard industry practices" found in the parties' agreement.
The trial court, however, found that Barbara Whittington's estimate most accurately reflected the inventory value that Central Oil owed to Algabal. The trial court based this conclusion in part on consideration of T.H. Jones' testimony that the store was "loaded," the photos that showed merchandise stacked high in the windows and in the aisles, and the testimony of Ms. Whittington that the marked prices of many of the items were inflated. Further, the court noted that when Algabal first entered into the Ruston lease, it paid Central Oil approximately $60,000 for the inventory. If $60,000 was a reasonable price for stocking a store in 2002, then $66,101.34 would not be an unreasonable price for a stocked store in 2004. The trial court's judgment was certainly reasonable and based on evidence, and therefore will not be disturbed by this court. In fact, the trial court rejected Algabal's appraiser's valuation and accepted the estimate of Central Oil's appraiser.
Damages for Loss of Gasoline Sales and Property Damages
Central Oil argues that the trial court erred in not awarding damages for lost gasoline sales and spoiled food after Algabal ceased to operate the Ruston store. Central Oil does not, however, dispute the trial court's ruling that the lease termination agreement went into effect on July 6, 2004.
The lease termination agreement's purpose was to free Algabal of the duty to operate the store, and to allow Central Oil total access to the premises without interference from its previous lessee, Algabal. Plaintiff had no duty to continue operations after the termination agreement until Central Oil got around to operating the store. We note that Algabal continued to pay the electric bill for a couple of months after ceasing operations of the Ruston store. The trial court found that any damages Central Oil suffered by loss of sales, food spoiling, or neglect of the property after July 6, 2004, were due to Central Oil's failure to fulfill its obligations pursuant to the termination agreement, and the fact that neither party took reasonable actions to mitigate damages caused by the resulting standoff. The record certainly supports this conclusion, and we will not secondguess the trial court on this issue.

Conclusion
For the reasons set forth above, the judgment of the trial court ordering Central Oil to pay Algabal $38,881.07 for the cost of the inventory and denying Central Oil's request for damages, is affirmed. Costs of appeal are to be borne by appellant, Central Oil.
AFFIRMED.