WILLIAMS, J.
11 This appeal centers around an accident in which defendant, Josephine Griffin, backed her vehicle into plaintiff, Liticia Evans. The trial court determined that plaintiff’s injuries were “minor” and awarded $750 in general damages, plus special damages in the amount of $538.45, the cost of plaintiffs visit to the emergency room. For the following reasons, we affirm the trial court’s judgment.
*332 FACTS
On November 18, 2004, defendant was backing her vehicle into a parking space at a washateria in Shreveport, Louisiana. Defendant did not see plaintiff, who was using a public telephone located behind the parking space. Defendant backed up too far, causing the bumper of her vehicle to strike plaintiff. According to plaintiff, she began to yell when she felt herself being pushed into the telephone booth, and defendant stopped and pulled her vehicle forward. Plaintiffs daughter, who witnessed the incident, testified that her mother was pinned by defendant’s vehicle, and when her mother yelled, defendant pulled forward.
Defendant testified that she backed into the parking place slowly and did not hear plaintiff yell. Instead, defendant indicated that after backing into the parking space, she pulled forward because she did not think she had left enough room at the rear of her vehicle to open the hatch to remove her items. She testified that she did not see plaintiff until she exited her vehicle. When plaintiff accused her of backing into her, she apologized for “scaring” plaintiff but denied striking her. According to defendant, plaintiff did not appear to be injured. When defendant was asked why she thought her ^vehicle did not strike plaintiff, she responded, “I’m sure I would have felt the bump.”
Based on the testimony of plaintiff and her daughter, the trial court found that contact between defendant’s vehicle and plaintiff was established by a preponderance of the evidence. Thus, this appeal focuses on the trial court’s determination with regard to the extent of plaintiffs injuries.
On direct examination at trial, plaintiff stated that defendant’s vehicle struck her in “the lower part of my back and down my legs and my butt.” She further stated that immediately after the accident she went to the emergency room at LSU Medical Center (“LSU”). Subsequently, she was examined and treated by a chiropractor and several physicians. Plaintiffs medical records were introduced into evidence without objection with regard to authenticity.
Plaintiff testified that on November 24, 2004, she first visited Dr. Crews, a chiropractor, and was “kind of like hurting all over” at that time. She indicated that after seeing Dr. Crews for a while, her neck and shoulder problems resolved, but her back pain continued; she was treated by Dr. Crews until near the end of March 2005. Dr. Crews did not testify at trial. A July 2005 letter from Dr. Crews to plaintiffs attorney indicated that plaintiff had received “conservative chiropractic treatment” for approximately four months, but due to “the persistence of neurological signs and symptoms,” he referred plaintiff to Dr. Marco Ramos, a neurosurgeon. A final evaluation report of the same date as the letter included a diagnosis with multiple elements including thoracic and lumbar disc degeneration, ^rupture or herniation of a thoracic and lumbar disc, cervical and lumbar strain/sprain, low back pain, thoracic pain and osteoarthritis, thoracic and lumbar subluxation, lumbar radiculitis, muscle spasm, and sciatica. With regard to causation, the report stated:
Ms. Evans’ symptoms appear to have come on as a result of an injury consistent with the one described in this report. Her history, subjective and objective findings show evidence, from a chiropractic viewpoint, that her condition is due to the current injury. No contributing factors are present from pre-existing conditions.
Plaintiff testified at trial that while she still was under treatment with Dr. Crews, she went to Dr. Richard Kamm, who or *333 dered a magnetic resonance imaging (“MRI”) examination and recommended that she continue to see Dr. Crews. When asked if Dr. Kamm referred her to any other doctors, she responded, “They said I needed surgery,” but she wanted a second opinion. When asked who told her she needed surgery, she responded, “Dr. Marco Ramos.” Plaintiff also indicated that Dr. Anil Nanda, a neurosurgeon at LSU, had given a second opinion that she undergo more tests and therapy. She then went to see physical therapist Doug Tietje?n for approximately one month, but her lower back pain did not improve.
Drs. Kamm, Ramos, and Nanda did not testify at trial. However, a July 2005 letter from Dr. Kamm to plaintiffs attorney confirmed that plaintiffs MRI report indicated a “small central disc extrusion at T4-5” and a “moderate central and bilateral paracentral disc extrusion at L5-S1.” The letter also confirmed that plaintiff was evaluated by Dr. Ramos, who recommended a “L5 laminectomy and L5-S1 microdiskectomy.” The letter 14ended with the following sentence:
It is my professional medical opinion that the injuries noted above and the recommendation for surgery are, more probably [sic] than not, the direct result of the automobile accident that occurred November 18, 2004.
A March 2005 letter from Dr. Ramos to plaintiffs attorney confirmed his recommendation for a total lumbar laminectomy at L5-S1 and microdiskectomy. A March 2005 report by Dr. Ramos to Dr. Kamm stated that an MRI revealed “significant extradural defect at L5-S1,” and indicated Dr. Ramos’ impression that plaintiff had manifestations of “left SI radiculopathy.”
A July 2005 letter from Dr. Nanda confirmed that he had explained to plaintiff that he did not believe she required surgery for her lumbar disc at that time; the letter indicated that her MRI revealed “a small disc” at L5-S1. Dr. Nanda’s letter stated that plaintiff had low back pain following the accident, that the pain radiated down both legs- with the left leg being worse, that she had some numbness and tingling in her legs, and that conservative therapy had given minimal relief.
In concluding her testimony on direct examination, plaintiff testified that she had injured her upper back in an automobile accident in 2003. She denied any prior injury to her lower back. Plaintiff also indicated that just before the current accident, she had sought treatment at LSU for “really bad muscle spasms” in her legs. However, she denied eyer having chronic back pain that lasted more than a year.
On cross examination, plaintiff was confronted with a copy of the emergency room report from LSU dated November 18, 2004, the day of the |Bcurrent accident. When asked if she recalled telling the doctor that she had a “history of lower back pain for past year and sciatica,” she denied doing so. When asked if she recalled saying that she was not pinned against the phone booth, she denied that as well. Finally, when asked if the report was wrong in saying “No new back pain,” plaintiff testified that the lower back pain began after the current accident and that her lower back had not previously been bothering her. The defense then offered the report into evidence. The “history” portion of the report stated, in pertinent part:
Date of occurrence was today. Ms. Evans is a 44yo BF with h/o lower back pain for the past year and sciatica. Pt states she was talking on the public telephone when “a chevy trailblazer bumped into me” @ 1800. Pt states bumper it hit her buttock mostly. She was not pinned. No fall. No new back pain.
*334 The portion of the report styled, “review of the musculoskeletal system” states, “Positive for leg pain. Left leg pain no different from usual sciatica.” The section of the report dealing with physical examination of the musculoskeletal system stated that plaintiff was positive for tenderness in her buttocks, “greatest on the right side.” The report also indicated that plaintiff did not have any bruises or abrasions, and she had no tenderness in her neck and upper and lower back. Plaintiff was ultimately given a differential diagnosis of “CONTUSION-BUTTOCK, SCIATICA.” The report noted that plaintiff was ambulatory, and she was given a prescription for Flexeril and discharged from the emergency room.
Plaintiff testified that the emergency room physician told her that she had started bruising. She also stated that immediately after the accident “everything from my legs up into my neck was basically hurting.” | (¡However, when asked if she remembered giving deposition testimony that her immediate pain was only on her left side from her buttocks to her foot, she responded affirmatively, adding:
I mean, I was hurting all over. You know, I don’t remember that. I mean, I’m on medication. I’m doing the best I can. I’m telling the truth.
After affirming that she was sure that she never had any pain in her lower back and buttocks before the accident at issue, plaintiff was asked if she remembered going to LSU in 1988 after a school bus accident. She answered affirmatively, but indicated she could not remember hurting her lower back. She then was asked if she would disagree if the doctor had diagnosed lumbar sprain, and she stated, “I would, because I can’t remember that.” The LSU record then was introduced, showing that plaintiff had complained of neck and lower back pain and that the diagnosis was cervical and lumbar sprain.
Plaintiff also testified that she did not remember going to LSU in 1996 complaining of back and leg pain, and she indicated that if a record dated September 3, 1996, referred to back and leg pain it would be incorrect; she also indicated that if it referred to chronic back pain it would be incorrect. The LSU report then was introduced into evidence, showing a chief complaint of back and leg pain and a diagnosis of chronic back pain.
Yet another point of disagreement between plaintiff and her LSU medical records arose when she was questioned with regard to a visit to LSU on October 28, 2004, less than one month prior to the accident at issue. When she was read a portion of the report from that visit concerning her |7compIaints and was asked if she had told the medical professionals the information attributed to her in the report, plaintiff replied, “No, I did not tell them that.” However, the report that was then introduced indicated plaintiff had complaints of bilateral leg pain, cramping, numbness and tingling, and that she reported the pain began in her right buttock and had spread to her right calf and left buttock.
On redirect examination, plaintiff admitted that she- had experienced back pain before the accident. However, when asked if she had ever had pain “in the very lower part” of her back, she responded in the negative.
At the conclusion of the trial, the court made several remarks with regard to plaintiffs testimony. Noting the disparity between plaintiffs testimony and her medical records, the court stated that it was “inclined to' go with what the records show.” After hearing arguments from the attorneys, the trial court stated:
*335 All right. The Court has listened carefully to the testimony, been able to make credibility determinations based on the Court’s personal observation of the witnesses as they testified. The Court has further reviewed the various item — exhibits that have been introduced into evidence. Based on the testimony, the Court’s credibility determinations, and the exhibits, the Court finds the following: First, on the issue of credibility, the Court is not impressed favorably with the credibility of the plaintiff in describing her injuries. The Court notes she has conflicts with a number of her medical records. The Court believes that she is exaggerating and can’t place a great deal of reliance in her description of her injuries.
The court found, by a preponderance of the evidence, that contact occurred between plaintiff and defendant’s vehicle. The court stated:
It just simply doesn’t sound to me like anything more | sthan a nudge. And I’ve looked in vain to try to find something that indicates that there was some aggravation of pre-existing injuries and I can’t find it. And I can’t rely on the plaintiffs own testimony, because I don’t think she’s being credible. I don’t think she’s testifying credibility [sic] about her injuries. I think she’s exaggerating and she just has too much conflict with her medical records. I believe she was nudged. It doesn’t appear to me to be anything more than a temporary situation at best.
Although finding plaintiffs injuries to be minor, the court concluded she had a right to seek medical treatment and to be “checked out.” Thus, the court awarded special damages in the amount of $538.45, the cost of plaintiffs visit to the emergency room. The court reiterated that it did not believe plaintiff was seriously injured, and noted there was a “differential diagnosis” of contusion or sciatica in the LSU report from the day of the accident, an indication that there was no physical evidence of bruising. Finally, the court awarded $750 in general damages to “tie some generals” to the special damages award. The court stated that it considered the award to be “on the liberal side” because it did not believe the incident was “of any great moment.”
DISCUSSION
On appeal, plaintiff focuses on the trial court’s statement that plaintiff had “a differential diagnosis of contusion or sciatica.” According to plaintiff, the diagnosis did not mean either/or; she argues that it would be nonsensical to assume that a physician would list contusion as a guess. Plaintiff also argues the statement in her medical records that she had suffered from sciatica and back pain for a year prior to the current accident was contradicted by the medical evidence and her testimony. She points out |gthat her treating physicians related her condition to the accident, and she asserts that she presented a pri-ma facie case that the accident caused her lower back pain.
An appellate court will not set aside the trial court’s factual findings in the absence of manifest error. Lewis v. State, Through Dept. Of Transp. and Development, 94-2370 (La.4/21/95), 654 So.2d 311; Algabal, Inc. v. Central Oil and Supply Corp., 41,656 (La.App.2d Cir.12/13/06), 945 So.2d 905. The great discretion accorded to the trial court’s factual findings is grounded in that court’s superior capacity to assess the credibility of the witnesses because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Rosell v. ESCO, 549 So.2d 840 (La.1989); *336 Gremillion v. Gremillion, 39,588 (La.App.2d Cir.4/6/05), 900 So.2d 262.
Under the manifest error standard, the criterion is whether 'the trial court’s findings are reasonable; even if the appellate court feels its own evaluation of the evidence is more reasonable, the trial court’s findings cannot be reversed if they are, in fact, reasonable. Lewis, supra; Algabal, Inc., supra. In other words, the appellate court may not reverse simply because it is convinced that had it been sitting as a trier of fact it would have ruled differently. Algabal, Inc., supra; Orea v. Scallan, 32,622 (La.App.2d Cir.1/26/00), 750 So.2d 483.
With regard to the connection between a plaintiffs credibility and the diagnosis of plaintiffs injury, this court has stated:
|inThe weight afforded a treating physician’s testimony is largely dependent upon the facts upon which his opinion is based.... A claimant’s lack of credibility oh factual issues can serve to diminish the veracity of her complaints to a physician.
Bass v. Allstate Ins. Co., 32,652 (La.App.2d Cir.1/26/00), 750 So.2d 460, 467, quoting Perow v. Lenzly, 30,833 (La.App.2d Cir.8/19/98), 716 So.2d 519, 523.
In the instant case, the trial court specifically-noted that it had made credibility determinations based on its personal observation of the witnesses as they testified, and the court repeatedly stated that it found plaintiff lacked credibility. Given the trial court’s firsthand observation of plaintiffs testimony and the numerous conflicts between plaintiffs testimony and her medical records, we find no manifest error in the court’s decision to credit the statement from the medical report dated November 18, 2004 with regard to plaintiffs history of suffering from back pain and sciatica for a year prior to the accident. Likewise, giving proper deference to the trial court’s credibility determination, we note that plaintiffs treating physicians’ relating of her condition to the accident was undoubtedly based in significant part on plaintiffs report of subjective symptoms of pain. Further, we note that while the degree of that relation could have been revealed through the medical professionals’ testimony, none of the doctors testified at trial.
Lastly, we attach little significance to the trial court’s statements with regard to a “differential diagnosis.” The record from November 18, 2004 is less than clear on whether the doctor found both a contusion and sciatica, or |ufound either a contusion or sciatica. Again, the doctor’s testimony could have provided clarity with regard to this issue. However, the same record indicated that the musculoskeletal portion of the physical exam revealed “no ecchymosis or abrasion,” and we know that an ecchymosis typically refers to a purple or “black-and-blue” spot caused by bleeding into the skin, as occurs with a bruise. See, Taber’s Cyclopedic Medical DictionaRY, 511 (15th ed.1995). In any event, we find no abuse of discretion in the trial court’s factual finding that the contact between defendant’s vehicle and plaintiff was more in the nature of a “nudge.” This finding, along with the trial court’s award of general damages, plainly shows that rather than finding plaintiff suffered no injury, the trial court found plaintiff suffered no significant injury; her sciatica problems pre-existed the accident.
CONCLUSION
For the foregoing reasons, the trial court’s judgment is hereby affirmed at plaintiffs costs.
AFFIRMED.