BROWN, Chief Judge.
|1 This litigation arises out of a contract to sell and install Karndean Knight Planks, a vinyl wood plank floor. Plaintiff, Miller Funeral Home, was in the process of renovating and adding to its facility in Monroe, Louisiana. Plaintiff contracted with defendant, Floors On Up, Inc., for the purchase of the Karndean Knight Planks and their *845 installation. Claiming defendant did not deliver the flooring timely, plaintiff sued to rescind the contract. Defendant reconvened to collect the balance owed under the contract. Defendant appeals from a judgment rendered by the Monroe City Court rescinding the contract, ordering that a $7,816 deposit be returned to plaintiff and ordering defendant to pay $7,700 in attorney fees. Defendant was also ordered to pick up the flooring previously delivered to plaintiff. Defendant’s recon-ventional demand for all damages resulting from a breach of contract was implicitly rejected. For following reasons, we reverse and render judgment rejecting plaintiffs demands and grant judgment in favor of defendant on its reconventional demand.

Discussion

Plaintiff in brief succinctly states its case as follows: “It is clear that there was a contract and the time of delivery was certain, i.e., 10 days, and defendant failed to comply, which constitute^] a breach of the contract and justified [Miller Funeral Home] canceling the contract.” The trial court agreed.

The Contract

Joseph and Cleo Miller owned and operated Miller Funeral Home and were adding on and renovating the facility. Cleo Miller started visiting | ^.defendant’s flooring store in early February 2006. A number of proposals were presented by defendant to Mrs. Miller during this period; however, not one was accepted. Finally, on March 14, 2006, Don Frith, a salesman for defendant, wrote and signed a “Proposal/Contract” to provide and install the Karndean flooring for $15,633.03. The contract required a deposit of half, or $7,816. Don Williamson, the store owner, told Mrs. Miller that to order the Karnde-an flooring the proposal must be signed and the 50% deposit paid. Mrs. Miller took the proposal and a store display depicting the Karndean Knight Planks and left. At this time, Frith had confirmed the availability of the Karndean flooring from a manufacturer. After a couple of weeks without any contact from the Millers, Williamson presumed that the proposal or offer was not accepted.
However, on April 18, 2006, Joseph Miller came to defendant’s store with the Proposal/Contract. At this time Miller signed (but did not date) the Proposal/Contract and gave Frith a check for $5,000. Miller was given a receipt for the $5,000 and was told by Frith that the amount needed for the deposit was $7,816. Miller returned to the store the next day, April 19, 2006, with an additional check in the amount of $2,816. On the receipt given to Miller for the $2,816 was handwritten in the right hand corner “10 working days.” The Proposal/Contract filed into evidence now has Joseph Miller’s signature and a handwritten statement “paid deposit $7,816.00.” The only date on the document appears at the top as March 14, 2006.
L/There clearly was an offer dated March 14, 2006. The evidence, however, establishes that this offer was not accepted until April 19, 2006. Thus, the contract date was April 19, 2006. The contract did not contain a time for delivery or installation.

Time of Delivery

After the contract was signed and the deposit received on April 19, 2006, Frith began looking for a manufacturer who could supply the plank flooring. He was able to find the supplier and complete the order on April 24, 2006.
On April 26, 2006, Mrs. Miller called Floors On Up to complain that delivery had not been made. Defendant contacted the manufacturer and was told that the Karndean Knight Planks were on backorder but could be shipped by a different method sooner at an added shipping cost *846 of $300. When Miller refused to pay the additional cost, defendant paid the extra amount, and the order was shipped. On May 3, 2006, Steven Rick Miller, Vice President of Miller Funeral Home, sent a letter to defendant requesting cancellation of the order and demanding return of the deposit which he incorrectly said was $10,274. Floors On Up answered, pointing out that the contract had not been completed until April 19, 2006, and that it could not cancel the order while the flooring was in route. Cleo Miller responded to this in correspondence dated May 9, 2006.
On May 10, 2006, Floors On Up received 64 of the 68 boxes of the Karndean Knight Planks that were ordered; these were delivered to Miller Funeral Home on the same day. At that time, Frith and the store’s flooring |4installer met with Steven Miller to plan the installation of the flooring. They were told that work could only be done on weekends. The flooring was left on Miller Funeral Home’s property.
On May 12, 2006, Floors On Up received the remaining four boxes; however, their installer was not allowed to start work. Miller Funeral Home filed a lawsuit against Floors On Up on May 26, 2006, alleging that defendant had misrepresented a delivery date and failed to deliver the flooring “within five days of signing the contract or within a reasonable time thereafter.” Floors On Up filed an answer and a reconventional demand for $4,090.70, the amount for all delivered products minus the tendered deposits and labor costs.
The contract at issue does not stipulate a delivery date or period of days for delivery. However, the final deposit receipt contains the handwritten notation “10 working days” in a blank section under the heading “Special Instructions.” Given this history, the trial court did not err in allowing parol evidence as to the intention of the parties. Fleet Fuel, Inc. v. Mynex, Inc., 40,683 (La.App.2d Cir.03/08/06), 924 So.2d 480, writ denied, 06-0762 (La.06/23/06), 930 So.2d 977.
Where factual findings are pertinent to the interpretation of a contract, those factual findings are subject to the manifest error standard of review. Mount Mariah Baptist Church, Inc. v. Pannell's Associated Electric, Inc., 36,361 (La. App.2d Cir.12/20/02), 835 So.2d 880, writ denied, 03-0555 (La.05/02/03), 842 So.2d 1101. Under the manifest error standard, the issue is whether the trial court’s findings are reasonable. Lewis v. State, Through Dept. Of Transp. and Development, 94-2370 (La.04/21/95), 654 So.2d 311; Algabal, Inc. v. Central Oil and Supply Corp., 41,656 (La.App.2d Cir.12/13/06), 945 So.2d 905.
The trial court, in its reasons for judgment, found that the testimony of the parties and witnesses led the court to conclude that Floors On Up agreed to provide Miller Funeral Home with the flooring at a certain time. We cannot, however, find a reasonable foundation for the trial court’s conclusions.
In their testimony, the Millers repeatedly altered their “belief’ in the date of the formation of the contract. Cleo Miller testified that she expected delivery within seven days of March 14, 2006, despite the admitted fact that on March 14 she signed no document and tendered no deposit as was clearly required by the proposal. Further, Mrs. Miller did not complain of a late delivery until the end of April, over a month after she left Floors On Up for the last time.
Joseph Miller testified that he knew nothing of the negotiations when he signed Floor On Up’s proposal on April 19, 2006, and admits that he did not read the proposal, and that the document he signed *847 could have been blank. Mr. Miller stated that his only function was to tender the deposit. As to the notation “10 working days” written on the deposit receipt, Mr. Miller did not recognize it or know who wrote it.
| fiMrs. Miller asserted that the period was five days, then five business days, and then five to seven business days, but never ten working days as purported by the notation on the deposit receipt.[1]
Bobby Williamson, owner of Floors On Up, testified that his business never guaranteed a certain delivery date, which was not refuted, and Don Frith testified that he did not guarantee a certain delivery date, only that such deliveries usually happened between five and ten days of ordering. Frith told Mrs. Miller this on March 14, 2006, when he had located a supplier of the Karndean Knight Planks. Mrs. Miller left on that date without accepting defendant’s offer. Over a month later, Mr. Miller came in to accept the offer. At this time, Frith had to look anew for a supplier.

Reconventional Demand

The record shows that Floors On Up performed its duty reasonably and in good faith. Over a month after last negotiating with Mrs. Miller, Floors On Up, upon receiving the required deposit from Mr. Miller, checked with suppliers and upon locating the Karndean Knight Plank flooring, placed the order within four business days. Upon learning from the manufacturer that the shipment would be delayed, Floors On Up paid the additional $300 to expedite the shipment.
Only 94% of the shipment (64 of 68 boxes) arrived on May 10, 2006, but Floors On Up informed Miller Funeral Home that it could begin installation without delay. We note that plaintiff would only allow the ^installation work on weekends. We also note that the record reveals that the final four boxes arrived at defendant’s store on May 12, 2006. Counting only “working days” this was close to the ten days noted on the receipt.
The contract is the law among the parties. Scott Construction Equipment Co. v. Trinity Oilfield Const. Co., Inc., 42,181 (La.App.2d Cir.06/20/07), 960 So.2d 1170; White v. Crook, 426 So.2d 334 (La.App. 2d Cir.1983). It is clear from the record that defendant performed its duty in good faith, that defendant delivered the flooring to Miller’s Funeral Home in a timely manner for an agreed upon price, and that Miller Funeral Home breached its obligation in refusing to allow defendant to install the flooring. Accordingly, we reverse the trial court’s judgment rescinding the contract between the parties and ordering Floors On Up to pick up the Karndean Knight Planks from Miller Funeral Home.
Further, after it became apparent to Floors On Up that Miller Funeral Home would not allow the installation of the flooring, defendant mailed to plaintiff an invoice in the amount of $4,090.70, which subtracted all labor and gave full credit for all deposits paid. Accordingly, we grant judgment in favor of defendant on its re-conventional demand in the amount of $4,090.70.

Conclusion

REVERSED.
LIT IS ORDERED, ADJUDGED, AND DECREED that the demands of plaintiff, Miller Funeral Home, be rejected and dismissed.
*848 IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment in favor of Floors On Up, Inc., and against Miller Funeral Home in the amount of $4,090.70 with legal interest from date of demand. All costs are assessed to Miller Funeral Home.

. In deposition testimony, however, Mrs. Miller stated that Frith told her that a delivery usually takes five to ten working days, but did not understand this as a guarantee from Frith.