PEATROSS, J.
 

 |, This case involves an alleged breach of a verbal agreement to sell and purchase a Hydro Axe 670 Fellerbuncher (“Shear”), which is a piece of logging equipment. The prospective purchaser, Mike Mayzel, sought and received a temporary restraining order prohibiting the owner of the Shear, Philip Gould, from alienating or disposing of the Shear following Mr. Gould’s refusal to go through with the sale. The TRO was subsequently dissolved by joint stipulation of the parties, with Mr. Gould reserving his right to seek damages at a later date. Mr. Mayzel then amended his petition to seek damages for Mr. Gould’s alleged breach of the verbal agreement to sell the Shear to him. After trial on the merits, the court found that Mr. Gould had breached the verbal agreement and awarded Mr. Mayzel monetary damages in the amount of $35,925. Mr. Gould appeals. For the reasons stated herein, we affirm.
 

 FACTS
 

 Mr. Gould is the president and sole shareholder of Louisiana Forestry Services, Inc., which buys tracts of timber and hires loggers to cut and skid it and then haul it to mills. Mr. Gould hired Mr. Mayzel as a logging contractor in July 2005 and the two enjoyed a good working-relationship until August 2006 when Mr. Mayzel took another job. During the time Mr. Mayzel worked for Mr. Gould, Mr. Gould owned the Shear, which was mortgaged to Sabine Bank. It is undisputed that the two men had a verbal agreement that, as long as Mr. Mayzel worked for Mr. Gould, Mr. Mayzel could use the Shear and the weekly note payments to Sabine Bank in the amount of $835 would be deducted from Mr. Mayzel’s weekly pay check |.¿until the equipment was paid in full. At that time, Mr. Gould would transfer title to the Shear to Mr. Mayzel.
 

 The problem arose when Mr. Mayzel told Mr. Gould that he would no longer be working for him, but he wanted to purchase the Shear for the amount of the payoff to Sabine Bank of approximately $59,000. It is undisputed that Mr. Gould had agreed to let Mr. Mayzel purchase the Shear for that amount. The dispute pertains to the time within which Mr. Mayzel had to pay Mr. Gould. The men present different versions of the conversations regarding the agreement.
 

 At trial, Mr. Mayzel testified that he was going to work for a smaller logging compa
 
 *981
 
 ny and intended to trade in the Shear for a smaller piece of equipment. On appeal he asserts that Mr. Gould was aware of his plan to trade in the Shear. Mr. Mayzel further asserts that, on his last day of work for Mr. Gould, he informed Mr. Gould that he would need “at least a month or two” to make the trade and requested that Mr. Gould accept monthly, rather than weekly, payments for the Shear. According to Mr. Mayzel, Mr. Gould agreed to that change. Mr. Mayzel then reached a trade agreement with Louisiana Machinery for $100,000.
 
 [1]
 
 Mr. May-zel also testified that he then told Mr. Gould that he did not have the monthly payment, but that he had reached an agreement for a trade and would have the money for him within the two months, to which Mr. Gould agreed. During this time, Mr. Mayzel retained possession of the Shear.
 

 1 -¡Mr. Gould related his version of the agreement at trial and testified that, when the two men talked on Mr. Mayzel’s last day of woi’k, he had agreed to give Mr. Mayzel two weeks either to come up with the weekly rent or pay off the mortgage on the Shear and he would then transfer title.
 

 Mr. Gould testified that Mr. Mayzel made three to five promises to pay within the next two weeks, but failed to make any payment. Mr. Gould subsequently informed Mr. Mayzel that he had found another buyer for the Shear.
 

 According to Mr. Gould, however, Mr. Mayzel would not tell him the location of the Shear and insisted he was going to pay him. During his testimony, Mr. Gould reluctantly agreed that he gave Mr. May-zel a “few more days,” and admitted that it was not a definite time period. About three weeks after Mr. Mayzel’s last day of working for Mr. Gould, Mr. Gould received a call from Mr. Mayzel who stated that he wanted to complete the sale. Mr. Gould testified that he refused because a week had gone by since the expiration of the initial two-week period he had given Mr. Mayzel and he had not been paid rent or the payoff amount. He further testified that he had not heard anything about giving Mr. Mayzel two months to make a trade until he heard Mr. Mayzel testify to that effect during the trial. Mr. Gould ultimately sold the Shear to a third party for $69,000.
 

 On September 1, 2006, the trial court issued a TRO, as requested by Mr. May-zel, enjoining Mr. Gould from disposing of the Shear. As previously stated, the TRO was dissolved by stipulation of the parties. Mr. Mayzel then amended his pleadings to allege that Mr. Gould had ^breached a verbal agreement and that he was, therefore, entitled to damages. In response, Mr. Gould filed a reconventional demand seeking damages and attorney fees for wrongful issuance of a TRO. The trial court subsequently ruled in favor of Mr. Mayzel, stating:
 

 ... there was not a definite period of time for Mayzel to pay off the equipment in the amount of $59,000. In fact, Mr. Mayzel had a deal with Louisiana Machinery to do so before Mr. Gould stopped the process. And if there was a definite period of time Mr. Gould’s testimony and deposition indicated that Gould continued to give Mayzel time to pay.
 

 The court then awarded Mr. Mayzel damages in the amount of $35,925, which represents the amount of the trade-in Mr. Mayzel had agreed to with Louisiana Ma-
 
 *982
 
 ehinery ($100,000) less the payoff to Sabine Bank of $59,000 and less a credit to Mr. Gould of $4,990, the rental value of the Shear while Mr. Mayzel was using the Shear, but not paying for it. This appeal ensued.
 

 DISCUSSION
 

 On appeal, Mr. Gould assigns the following three errors (verbatim):
 

 1. The Trial Court erred in finding that DefendanL-Appellant, Philip Gould, breached the verbal agreement between him and Plaintiff-Appellee, Mike Mayzel, rather than correctly finding that Mike Mayzel actually breached the verbal agreement.
 

 2. Even assuming, for purposes of argument only, that Gould breached the verbal contract, the Trial Court erred by finding that Mayzel was damaged by the alleged breach to the extent of $35,925.00, together with costs and legal interest from date of judicial demand.
 

 3. The Trial Court erred in failing to award attorney fees and costs to Philip Gould after, in effect, finding that Mayzel had caused the wrongful issuance of a temporary restraining order restraining Gould from selling or disposing of the 2002 Hydro-Ax 670 Fellerbuncher (Shear), Serial # 18315.
 

 1
 
 ¡¿Breach of Verbal Agreement to Purchase and Sell
 

 Again, there is no dispute that the parties entered into a verbal agreement to purchase and sell the Shear. The only issue is the time of payoff, or within what time period Mr. Gould agreed to allow Mr. Mayzel to pay off the mortgage on the Shear to Sabine Bank. This is a question of fact and the parties present different versions of the agreement as to time.
 

 A trial court’s findings of fact will not be disturbed on appeal unless the reviewing court finds that they are clearly wrong or manifestly erroneous.
 
 Stobart v. State, Through Department of Transportation and Development,
 
 617 So.2d 880 (La.1993);
 
 Rosell v. ESCO,
 
 549 So.2d 840 (La.1989). Under the manifest error standard, the criterion is whether the trial court’s findings are reasonable; even if the appellate court feels its own evaluation of the evidence is more reasonable, the findings of the trial court cannot be reversed if they are, in fact, reasonable.
 
 Lewis v. State through Department of Transportation and Development,
 
 94-2370 (La.4/21/95), 654 So.2d 311. In other words, the appellate court may not reverse simply because it is convinced that, had it been sitting as a trier of fact, it would have ruled differently.
 
 Orea v. Scallan,
 
 32,622 (La.App. 2d Cir.1/26/00), 750 So.2d 483. A finding of fact by a trial court should be upheld unless it is clearly wrong.
 
 Madison v. Thurman,
 
 32,401 (La.App. 2d Cir.10/27/99), 743 So.2d 857.
 

 Under the manifest error standard, the appellate court must not reweigh the evidence or substitute its own factual findings.
 
 Salvant v. State,
 
 05-2126 (La.7/6/06), 935 So.2d 646. Where there are two permissible | ^views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or plainly wrong.
 
 Id.
 
 Further, when the factual finding of the trial court is based on a credibility call, that finding can virtually never be manifestly erroneous or plainly wrong.
 
 Id.; Stobart v. State, supra.
 

 In the case
 
 sub judice,
 
 the trial court heard and weighed the testimony of both Mr. Gould and Mr. Mayzel regarding the agreement as to when Mr. Mayzel would pay off the mortgage on the Shear and have title transferred to him by Mr.
 
 *983
 
 Gould. In its reasons for judgment, the trial court quoted at length the testimony that supports its finding that Mr. Gould allowed Mr. Mayzel an indefinite period ■within which to complete the transaction. Significantly, Mr. Gould reluctantly agreed in his testimony at trial that he gave Mr. Mayzel an indefinite extension within which to pay him for the Shear. In addition, the circumstances of the agreed sale support the finding that Mr. Gould was aware that Mr. Mayzel’s new logging job required a smaller piece of equipment and that he was in the process of negotiating a trade-in deal with another party. After reviewing the contradictory testimony herein, it is apparent that the trial court found Mr. Mayzel’s testimony to be more credible and we find no manifest error in that conclusion.
 

 Damages
 

 Mr. Gould argues that the trial court’s acceptance of $100,000 as the value of the Shear for purposes of computing damages is without support. We disagree.
 

 17Philip Holtzclaw of the Monroe Branch of Louisiana Machinery testified on behalf of Mr. Mayzel regarding the prospective trade-in agreement for the Shear. Mr. Holtzclaw was accepted by the court as an expert in the field of equipment appraisals and sales. In his testimony, Mr. Holtzclaw described the agreement he had reached with Mr. Mayzel whereby Louisiana Machinery would afford Mr. Mayzel a trade-in allowance on the Shear of $100,000 against the purchase of a smaller piece of logging equipment referred to as a Timber King. Included in the record is a Sales Quotation authored by Mr. Holtzclaw reflecting the trade-in allowance of $100,000 on the Shear. This evidence supports the trial court’s reasonable conclusion that the valuation for purposes of damages for the breached agreement should be $100,000.
 

 A trial court’s determination of damages is also subject to the manifest error standard of review and is entitled to great deference on review.
 
 Williams v. Enriquez,
 
 41,200 (La.App. 2d Cir.6/28/06), 935 So.2d 269. We will not, therefore, disturb the trial court’s award of damages representing the difference between what Mr. Mayzel would have received on the trade had Mr. Gould not breached the verbal agreement ($100,000), and the payoff to Sabine Bank less a credit to Mr. Gould for the time period that Mr. Mayzel had possession of the Shear, but was not making payments.
 

 Finally, we find no error in the conclusion of the trial court that there is no basis for an award of attorney fees and costs to Mr. Gould.
 

 UCONCLUSION
 

 For the foregoing reasons, the judgment of the trial court is affirmed at the cost of Defendant, Philip Gould.
 

 AFFIRMED.
 

 [1]
 

 . Mr. Mayzel suggests that the figure of $100,000 is the total amount he would have paid to Mr. Gould, including the sum of the periodic payments made by Mr. Mayzel to Mr. Gould plus the approximate payoff to Sabine Bank of $59,000.