STEWART, J.
 

 | ,In this dispute involving a contract to build a home, the trial court awarded the contractor / plaintiff, Bareat, L.L.C., the sum of $12,563.85 representing unpaid invoices and a five percent profit on the contract, plus attorney fees totaling $12,500, and costs. The judgment also recognized the validity of a lien filed by Bareat under the Private Works Act, La. R.S. 9:4801
 
 et seq.
 
 The defendants / homeowners, Rodney James Nail and Connie Nail, have appealed. Finding no error, we
 
 affirm.
 

 FACTS
 

 On June 8, 2006, the Nails entered a contract with Bareat for the construction of their home. Rodney Nail and Barcat’s owner, Tony Barnes, had known each other since teenagers, and Rodney, who is a painter, had done some work for Barnes over the years. The Nails were designated as the owner of the home in the contract. Barnes was to act as construction-manager. The contract was priced as a “cost plus project” with a five percent (5%) profit to Bareat upon substantial conyoletion. Payments were to be disbursed from the project building account on an as-needed basis, allowing review and discussion with the Nails. Moreover, the contract provided that the Nails could perform some subcontractor work such as painting, flooring, and landscaping “as joartial down payment.”
 

 On July 6, 2006, Bareat purchased the lot on which the Nails’ house was to be built and obtained financing for the project in the amount of $300,000 secured by a mortgage on the lot.
 
 [1]
 
 Construction then began.
 

 12According to Barnes’ testimony, the first part of the project included clearing trees off the lot, laying the foundation, and framing the house. Connie Nail believed this phase of the project took too long to complete and cost too much. Barnes disputed this and testified that she complained about payment of basic labor costs. As the project proceeded, the Nails exercised their option to perform some of the work by coordinating subcontractors for flooring, painting, interior trim finish, landscaping, and pouring the driveway. Connie Nail testified that she also purchased fixtures, lighting, counter tops, and appliances. Payments for work done on the house were made out of a project account controlled by Bareat. The check register admitted into evidence shows over $20,000 in payments made directly to Connie Nail. Her claim that she did not receive this much from Bareat and that she paid for certain items from her personal account was unsubstantiated.
 

 To have the Nails in their new home in time for the holidays, the transfer of the property from Bareat to the Nails took place on November 21, 2006. According to the “Cash Sale Deed” executed by Bareat and the Nails, the stated consideration was the Nails’ “assumption of the outstanding mortgage executed by Bareat LLC in favor of Bancorp - South.” The Nails obtained financing to pay off the Bancorp mortgage and additional amounts listed on the “Settlement Statement,” including un
 
 *1249
 
 paid construction costs submitted by Barnes at the time of the closing.
 

 After the property transfer, Barcat sought to collect additional construction costs that had become due as well as the five percent profit |8owed under the contract to build. When the Nails failed to pay, Barcat filed a lien against their property. It then filed suit to collect the amount claimed due and to enforce its lien. The Nails denied that it owed any additional payment and reconvened seeking cancellation of the lien and damages. The matter proceeded to trial.
 

 Barnes testified that he spoke to Rodney Nail around the time of the closing and that Nail knew that additional costs and the profit remained to be paid. Both Nails denied agreeing to pay any additional money after closing. Though Connie Nail asserted that Barcat paid itself the profit during the construction instead of waiting until substantial completion as provided in the contract, Barnes denied that Barcat included the profit in its invoices. He explained that any markup was to cover labor costs, such as taxes and workers’ compensation insurance.
 

 Robert McKinzie, the attorney who handled the closing, had little recollection of his conversation with Barnes. He recalled that Barnes faxed him unpaid invoices that were used to prepare the settlement statement, but he did not recall any discussion of amounts owed Barcat. He explained that Barcat had to sign the title of the property over to the Nails whose loan was being processed as a refinance. We note that the settlement statement in conjunction with the Nails’ loan does not list a seller or make any reference to Barcat. McKinzie also testified that he would not have proceeded with the closing if he had known that payments were still due. He explained that the mortgage company required him to guaranty there was no possibility of liens priming its mortgage.
 

 1 ¿After hearing the testimony, the trial court rendered judgment in favor of Bar-cat for $12,563.85, representing the amount due for certain unpaid construction costs and the five percent profit. The trial court found that there had been mistakes in the closing, that Barcat was entitled to recover additional bills that became due, and that no records credibly showed that Barcat had previously billed for its five percent profit.
 
 [2]
 
 As allowed by a provision in the contract to build, the trial court also awarded Barcat attorney fees in the amount of $12,500 plus court costs. The Nails’ appeal followed.
 

 DISCUSSION
 

 In their first assignment of error, the Nails argue that the trial court erred in finding that the contract to build survived the closing on the sale of the home. They contend that the June 8, 2006 agreement between the parties should be viewed as a contract to “sell and buy,” with the intent being for Barcat to sell a completed house to them with their performance being to buy the residence. They further contend that the cash sale deed evidences the closure of their obligation to Barcat. Absent allegations of fraud, error or mistake, the trial court should not have considered par-ol evidence to determine that anything other than the consideration stated in the deed was owed.
 

 The Nails describe the contract between them and Barcat as a sales contract. However, the parties did not agree to a contract for the sale of a | ¿house.
 
 *1250
 
 Instead, they contracted for the construction of a house for a stipulated price. A contract to build or a construction contract is distinct from a contract for a sale of a home.
 
 Price v. Huey Childs Builder, Inc.,
 
 426 So.2d 398 (La.App. 2d Cir.1983),
 
 writ denied,
 
 433 So.2d 164 (La.1983);
 
 Duhon v. Three Friends Homebuilders Corp.,
 
 396 So.2d 559 (La.App. 3d Cir.1981);
 
 Broussard v. R.G. Pierret,
 
 215 So.2d 136 (La.App. 3d Cir.1968). As stated in La. C.C. art. 2756, “To build by a plot, or to work by the job, is to undertake a building or a work for a certain stipulated price.” The person who undertakes the work may furnish his work and industry alone, or may also furnish the materials necessary for the work. La. C.C. art. 2757. Thus, an agreement in which one party undertakes to construct a building for a specified price and furnishes either his work alone or his labor and materials is a construction contract or contract to build. The price is not for the purchase of the property as in a sale; rather, the price is compensation for the work performed and materials used in constructing the home.
 

 Contracts are the law between the parties and must be performed in good faith. La. C.C. art.1983. The Nails and Barcat entered a contract to build a single-family home for the stipulated price of cost plus a five percent profit. Barcat performed its obligations under the contract by building the home and by transferring the property to the Nails. The cash sale deed by which the property was transferred by Barcat to the Nails makes no reference to the obligations set forth in the contract to build, including payment of the price stipulated in the agreement. Under the building | ficontract, the Nails were considered the owners of the home throughout the project. Their obligation was not to purchase the property for consideration as in a sale but to pay Barcat the stipulated price for its work according to their contract to build. The cash sale deed does not evidence the Nails’ payment of Bar-cat’s profit under the contract to build but merely evidences their acceptance of the finished product and assumption of the mortgage that financed the costs of construction. The trial court heard the testimony of the parties and that of the closing attorney who prepared the settlement statement in conjunction with the Nails’ refinancing of the mortgage assumed in the cash sale deed. The trial court then found that the Nails had not paid Barcat its five percent profit and had not paid certain costs that had accrued after the transfer of the property. These are factual findings made by the trial court.
 

 The trial court’s findings of fact will not be disturbed on appeal unless they are found to be clearly wrong or manifestly erroneous.
 
 Stobart v. State, Through Department of Transportation and Development,
 
 617 So.2d 880 (La.1993). Where two permissible views of the evidence exist and where the finding of fact is based on credibility determinations, the fact finder’s choice can never be manifestly erroneous or clearly wrong.
 
 Salvant v. State,
 
 05-2126 (La.7/6/06), 935 So.2d 646;
 
 Mayzel v. Gould,
 
 44,081 (La.App.2d Cir.2/25/09), 4 So.3d 979. Having reviewed the record, we cannot say that the trial court’s findings in this matter are clearly wrong or manifestly erroneous.
 

 [7In their second assignment of error, the Nails argue that Barcat had no legal basis to file the lien. They point out that the cash sale deed was made with “full guarantee of title, and with complete transfer and subrogation of all rights and actions of warranty against all former proprietors .... ” They also assert that any lien rights were lost to Barcat through confusion under La. C.C. art.1903.
 

 We are not persuaded by the Nails’ arguments. The language referred to in the deed, which warrants title to the
 
 *1251
 
 property, does not preclude the assertion of a lien against the property for the Nails’ failure to pay the price stipulated in the contract to build for Barcat’s work and the other unpaid construction-related costs. Moreover, the doctrine of confusion is not applicable here. Even after transfer of the property, Barcat remained obligor as to amounts owed by the Nails, the obli-gees, under the contract to build. There was no uniting of the qualities of obligor and obligee in the same person as is required to extinguish an obligation by confusion under La. C.C. art.1903. The cash sale deed transferring title of the property does not preclude or extinguish the Nails’ obligation to perform by paying the amounts found due under the contract to build. We also observe that as between the parties, the Nails were considered the owners of the property from the inception of the contract to build.
 

 Under La. R.S. 9:4801(1), contractors have a privilege on an immovable to secure the owner’s obligation to pay the price of their work. As provided in La. R.S. 9:4806(A):
 

 A. An owner, co-owner, naked owner, owner of a predial or personal servitude, possessor, lessee, or other person owning or | ^having the right to the use or enjoyment of an immovable or having an interest therein shall be deemed to be an owner.
 

 In
 
 LeBlanc v. Chateau Riviere Home for the Aged, Inc.,
 
 97-883 (La.App. 5th Cir.2/11/98), 708 So.2d 468, the court found a lien enforceable against Chateau even though it was not the record owner of the property when the work was done and when the lien was filed. The court reasoned that Chateau contracted with Le-Blanc, the lien holder, for the performance of his architectui’al services and breached the contract. Chateau held itself out as owner of the work, intended to become owner, and actually became the owner of the property on which the work was completed. The recorded lien attached to the property when Chateau acquired it.
 

 In
 
 Circle H Building Supply, Inc. v. Dickey,
 
 558 So.2d 680 (La.App. 1st Cir.1990), a materialman’s lien was held to be unenforceable against the purchasers of a home. The purchasers were merely parties to an unrecorded purchase agreement when the plaintiff supplied building materials to the contractor, who was then the property owner. The court rejected the argument that a prospective purchaser who signed a purchase agreement has an interest in the property sufficient to be considered an “owner” within the intent of the Private Works Act. However, the court’s reasoning suggested that a party to a construction contract could be considered an owner. The court noted that the Private Works Act provides relief to an owner from personal liability for claims arising out of the performance of a contract by a general contractor when a bond is given and the contract filed in accordance with La. R.S. 9:4802(C). A prospective purchaser, unlike a party to a construction contract, would not be able to avail himself of this protection.
 

 | nThis record shows that the Nails contracted with Barcat to build a house for a price of cost plus a five percent profit. The parties did not enter a mere purchase agreement. Rather, they entered a construction contract to build the Nails’ home. The Nails were designated the owners of the property in the contract to build. They intended to become the property owners and did so. Moreover, .they oversaw and performed a significant part of the work in completing the house. They had an interest in the immovable as well as the right to use and enjoy it as indicated by their active involvement in the building process. Under the facts set forth in this record, we find that the Nails are “owners”
 
 *1252
 
 under the Private Works Act and that the lien asserted by Bareat to secure payment of the price of its work is valid and enforceable. No damages are due to the Nails.
 

 Lastly, the Nails argue that even if the judgment is upheld the attorney fees awarded Bareat should be reduced to reflect the fact that it was awarded less than half of the contractual damages it claimed.
 

 Section 6.11 of the contract states that “the defaulting or nonprevailing party shall be liable to the other party for all costs, including reasonable attorneys fees, incurred in enforcing or defending any rights or obligations created by this agreement.” We find no merit to the argument that Barcat’s attorney’s fees should be reduced because it was nonprevailing to the extent of the damages claimed but not awarded. Under Section 6.11 and the resolution of this dispute, the Nails are the “defaulting and nonprevailing” party and are contractually liable for all costs, including | ^reasonable attorney fees incurred by Bareat in enforcing its lights under the contract.
 

 A trial court is vested with considerable discretion in setting attorney fees.
 
 Woodall v. Weaver,
 
 43,050 (La.App.2d Cir.2/13/08), 975 So.2d 750;
 
 Minsky v. Shumate,
 
 40,375 (La.App.2d Cir.3/10/06), 924 So.2d 488. The record shows that Bareat sought over $14,300 in attorney fees. The trial court thought the amount was excessive and determined a reasonable fee to be $12,500, which included work done from the time of trial until the hearing on the fee issue. We find no abuse of discretion by the trial court in making this award.
 

 In its appellee brief, Bareat has argued for an increase in the attorney fee award. However, the issue was not raised in a timely filed answer and will not be considered.
 
 Hill v. Cloud,
 
 26,391 (La.App.2d Cir.1/25/95), 648 So.2d 1383,
 
 writ not considered,
 
 95-0486 (La.3/17/95), 651 So.2d 260.
 

 CONCLUSION
 

 For the reasons explained, the judgment of the trial court is affirmed. Costs of appeal are assessed against appellants, Rodney James Nail and Connie Nail.
 

 AFFIRMED.
 

 [1]
 

 . Bareat purchased Lot 125 in the Lakeside on Longlake Subdivision in Caddo Parish. We note that the contract to build referred to a lot in Twelve Oaks subdivision. Apparently, the parties agreed to a change in location for the construction of the home, and this change did not otherwise affect the agreement between them.
 

 [2]
 

 . The Nails timely filed a request for written reasons for judgment. La. C.C.P. art. 1917(A) directs the trial court to provide written findings of fact and reasons for judgment when a timely request is made. Although the trial court did not comply with the mandate of this article, it did state reasons for its ruling in open court.